UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
JOANNA TULCZYNSKA,

                          Plaintiff,

                                                17 Civ. 1669 (DAB)
                                                <u>MEMORANDUM & ORDER</u>

        v.

QUEENS HOSPITAL CENTER, et al.,
                          Defendants.
------------------------------------------------X
DEBORAH A. BATTS, United States District Judge.

        On February 7, 2017, Plaintiff Joanna Tulczynska filed suit

in New York County Supreme Court against Defendants Queens

Hospital Center ("QHC"), Mount Sinai Health System, Inc. ("Mount

Sinai") (together, the "Hospital Defendants"), and Prudential

Insurance Company of America ("Prudential") for unilateral

mistake (Count I), negligence (Count II), constructive fraud

(Count III), and misrepresentation (Count IV); against the

Hospital Defendants and Defendant Dr. Ricardo Lopez for

discrimination in violation of the Fourteenth Amendment of the

United States Constitution, the Americans with Disabilities Act

("ADA"), the New York State Constitution, and the New York State

Human Rights Law ("NYSHRL") (Count V); and against the Hospital

Defendants as well as Lopez, Defendant Dr. Jean Fleishman, and

Dr. Habibur Rahman (collectively, the "Individual Defendants")

for wrongful termination in violation of the U.S. Constitution,

the ADA, the New York Constitution, and NYSHRL (Count VI) and

personal injury due to discrimination under the U.S.

Constitution, the ADA, the New York Constitution, and NYSHRL

(Count VII).[1]

The Hospital and Individual Defendants removed the case to

this Court on March 6, 2017 and filed a Motion to Dismiss on

March 13, 2017, which Plaintiff opposed. Prudential filed its

own Motion to Dismiss on April 17, 2017,[2] which Plaintiff also

opposed. On May 17, 2017, Plaintiff filed a Motion seeking to

remand her case back to State Court, amend her Complaint, and

file a late notice of claim, which all Defendants opposed. For

the following reasons, the Court GRANT Defendants' Motions to

Dismiss.

 I.   BACKGROUND

      A. Disability Insurance

      Plaintiff worked for QHC as a pulmonologist and as an

associate professor at Mt. Sinai School of Medicine. (Compl. ¶

2.)[3] While employed at QHC, Plaintiff went to its Human Resources

---

[1] In various Memoranda of Law under consideration by the Court,
Plaintiff also cites the New York City Human Rights Law
("NYCHRL") as a basis for her disability discrimination claims,
but the Complaint contains no references to the NYCHRL.

[2] Due to a docketing error, Prudential refiled its Motion on May
26, 2017.

[3] Plaintiff's Complaint includes virtually no dates.

2

department, run by Roselyn Marquez,[4] seeking to enroll in a

disability insurance policy, administered by Prudential, under

which Plaintiff would pay the premiums with post-tax dollars so

that she could avoid paying taxes on any benefits she might

later receive from the policy. (Id. ¶ 11.) However, QHC's Human

Resources department, Mt. Sinai, and Prudential, allegedly

contrary to their promises, enrolled Plaintiff in a plan under

which Plaintiff paid premiums with pre-tax dollars. (Id. ¶ 12.)

Plaintiff became aware of QHC, Mt. Sinai, and Prudential's

alleged mistakes when the Internal Revenue Service informed her

that she owed $28,284.32 in back taxes. (Id. ¶ 13.)

B. Disability Discrimination

Plaintiff has Parkinson's Disease, which QHC and Mt. Sinai

have been aware of since 1996. (Compl. ¶ 32.) She alleges that

Ricardo Lopez, QHC's Chief Pulmonologist, told her, at least

twice, that she would not receive a workplace accommodation for

her Parkinson's Disease nor would she receive any special

treatment because of it. (Id.) Plaintiff alleges that, because

of the Hospital Defendants' refusal to provide her with an

---

[4] Although Marquez is included in the caption of this case and is
specifically mentioned in Count I, it is unclear whether
Plaintiff actually seeks to hold Marquez personally liable. For
simplicity's sake, the Court does not include her in its
discussion of Counts I through IV. However, the Court's ruling
also applies to any attempts by Plaintiff to make out causes of
action against Marquez.

accommodation, she was forced to retire early, thereby

constituting constructive discharge due to her disability. (Id.

¶ 38.) Plaintiff also alleges that Habibur Rahman, another

doctor in QHC's pulmonology department, Jean Fleishman, another

then-Chief Pulmonologist and administrator at QHC, and Lopez

made derogatory marks about her. (Id. ¶ 38.) For example, when

Plaintiff was in line for a Chief of Pulmonary position, Rahman

said, "We will not work for you." (Id.) Based on the rules of

promotion for the Hospital Defendants, Plaintiff was allegedly

in line for the position of Chief of Pulmonology, but Fleishman

passed her over for the position in favor of Lopez. (Id.) All of

this allegedly served to aggravate Plaintiff's condition. (Id. ¶

43.)

II.   Discussion

    A. Legal Standard for Motion to Dismiss

    For a complaint to survive a motion brought pursuant to

Federal Rule of Civil Procedure 12(b)(6), the plaintiff must

have pleaded "enough facts to state a claim to relief that is

plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007). The Supreme Court has explained,

> A claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to draw the
> reasonable inference that the defendant is liable for
> the misconduct alleged. The plausibility standard is not
> akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted

4

> unlawfully. Where a complaint pleads facts that are
> "merely consistent with" a defendant's liability, it
> "stops short of the line between possibility and
> plausibility of entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–57). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Supreme Court further stated,

> In keeping with these principles a court considering a
> motion to dismiss can choose to begin by identifying
> pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of
> truth. While legal conclusions can provide the framework
> of a complaint, they must be supported by factual
> allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and
> then determine whether they plausibly give rise to an
> entitlement to relief.

Id. at 679.

In considering a Rule 12(b)(6) motion, the Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002); Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

However, this principle is "inapplicable to legal conclusions,"

<u>Iqbal</u>, 556 U.S. at 678, which, like the complaint's "labels and

conclusions," <u>Twombly</u>, 550 U.S. at 555, are disregarded. Nor

should a court "accept [as] true a legal conclusion couched as a

factual allegation." <u>Id.</u> at 555. In resolving a 12(b)(6) motion,

a district court may consider the facts alleged in the

complaint, documents attached to the complaint as exhibits, and

documents incorporated by reference in the complaint. <u>DiFolco v.</u>

<u>MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010).

   B. Whether Federal Jurisdiction Exists and Whether Counts I
      through IV Are Preempted by ERISA

   Plaintiff's disability discrimination claims raise federal

questions on their face, citing violations of the Americans with

Disabilities Act and the U.S. Constitution. Plaintiff, however,

has consented to withdraw these claims and seeks to remand the

case back to State Court.

   In general, "[t]he 'well-pleaded complaint rule' is the

basic principle marking the boundaries of the federal question

jurisdiction of the federal district courts." <u>Metro. Life Ins.</u>

<u>Co. v. Taylor</u>, 481 U.S. 58, 63 (1987). Ordinarily, federal

preemption is a defense and, accordingly, does not appear on the

face of a complaint. <u>Id.</u> There is an exception, however, to the

well-pleaded complaint rule when Congress "so completely pre-

empt[s] a particular area that any civil complaint raising this

select group of claims is necessarily federal in character." Id. at 63-64. The Supreme Court has held that this exception applies to cases involving plans covered by ERISA § 502(a). Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 53-57 (1987); Metro. Life Ins. Co. v. Taylor, 481 U.S. at 64-67; Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004).

In general, "preemption depends on whether state remedies are consistent with ERISA's core purposes." Gerosa v. Savasta & Co., 329 F.3d 317, 325 (2d Cir. 2003). The Second Circuit characterized the preemption test in Arditi v. Lighthouse International, 676 F.3d 294, 299 (2d Cir. 2012), as amended (Mar. 9, 2012):

> Under the Supreme Court's test in [Aetna Health Inc. v.] Davila[, 542 U.S. 200 (2004)], ERISA preempts a cause of action where: (1) "an individual, at some point in time, could have brought his or her claim under ERISA § 502(a)(1)(B);" and (2) "no other independent legal duty . . . is implicated by a defendant's actions." To avoid potential confusion under the first prong of Davila, this Court has further clarified that the plaintiff must show that: (a) he is the type of party who can bring a claim pursuant to § 502(a)(1)(B) of ERISA; and (b) the actual claim asserted can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B).

Id. at 299 (internal citations omitted). In terms of types of parties who can bring claims under ERISA, cases involving "core ERISA entities: beneficiaries, participants, administrators, employers, trustees and other fiduciaries, and the plan itself" are likely to be preempted, while those that do not involve core

entities are not likely to be preempted. Gerosa, 329 F.3d at 324.

"[S]tate laws that would tend to control or supersede central ERISA functions-such as state laws affecting the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits-have typically been found to be preempted." Id. Courts in this Circuit have, at times, held that claims under New York State law for breach of contract, breach of common-law fiduciary duty, fraud, negligence, and misrepresentation are preempted by ERISA. Varela v. Barnum Fin. Grp., 644 F. App'x 30, 31-32 (2d Cir. 2016); Costa v. Astoria Fed. Sav. & Loan Ass'n, 995 F. Supp. 2d 146, 154-55 (E.D.N.Y. 2014) (collecting cases). However, the Second Circuit has noted "garden-variety state-law malpractice or negligence claims against non-fiduciary plan advisors, such as accountants, attorneys, and consultants" as types of claims not likely to be preempted. Id. Similarly, claims arising from promises made separately from an ERISA plan that do not affect the terms of the plan are not preempted by ERISA. Stevenson v. Bank of N.Y. Co., 609 F.3d 56, 62 (2d Cir. 2010).

1.    Application to Counts I through IV

Plaintiff argues that her claims do not arise from the benefit itself, but rather from a separate promise to enroll her

in an after-tax disability policy and the Hospital Defendants'
and Prudential's failure to do so. (Pl.'s Mem. Law Supp. Mot. to
Remand at 7.) She says her claims are based not on a wrongful
denial of benefits under the plan she was enrolled in, but
instead that she was enrolled in the wrong plan altogether.
(Id.)

Plaintiff's arguments fail. Plaintiff does not dispute that
the plan she was enrolled in is an ERISA-governed plan. Although
she can twist her claims to say that she was enrolled in the
wrong plan, under the first prong of the Davila test, she also
could have brought her claims pursuant to ERISA. For example,
she could instead say that the Hospital Defendants and
Prudential falsely represented to her the terms of the plan in
which she was enrolled. While ERISA preemption is not without
limits, the game of semantics Plaintiff's construction would
require the Court to engage in to hold her claims were not
preempted runs into ERISA's broad scheme and its purpose of
creating uniform enforcement mechanisms.

Under the second prong of the Davila test, Prudential and
the Hospital Defendants did not owe Plaintiff a fiduciary duty
separate from any duty owed by them under ERISA. Plaintiff's
Complaint states that they owed her a duty based on the fact
that she signed up for a disability insurance policy. (Compl. ¶
14.) It is unclear to the Court how this creates a duty outside

9

of those in the referenced ERISA plan or in the statute itself.
This is evident when Plaintiff's case is compared to cases such
as Gerosa v. Savasta & Co., 329 F.3d 317 (2d Cir. 2003). In
Gerosa, the plaintiffs brought a claim, among others, for
professional malpractice against a plan actuary. The Court noted
that "[r]egulating the professions, particularly under a rubric
of professional malpractice, is a traditional state function."
Id. at 328. Here, Plaintiff does not cite any state law in
support of her claims nor offer any other explanation for why
the Hospital Defendants and/or Prudential owe her a duty.

Furthermore, Plaintiff, the Hospital Defendants, and
Prudential are "core ERISA entities." See id. at 324. Plaintiff
is a beneficiary/participant in the plan, the Hospital
Defendants are employers, and Prudential is the plan's
administrator.

Plaintiff's case can be distinguished from Stevenson v.
Bank of New York Co., 609 F.3d 56 (2d Cir. 2010), on which she
relies. Unlike in Stevenson, Plaintiff here was still a
beneficiary of the plan, whereas Stevenson came to a separate
agreement with the defendants in that case precisely because he
left the defendant's employ and was no longer participating in
the plan. See id. at 60-61; Arditi, 676 F.3d at 300.

Furthermore, that Plaintiff's claims are preempted by ERISA
is also evident when looking at the language of her Complaint.

10

Under Count I, unilateral mistake, Plaintiff pleads that she entered a contract with the Hospital Defendants and Prudential, requiring them to act as her fiduciary, when she "asked to sign up for a disability policy and that policy was signed." (Compl. ¶ 14.) Further, they allegedly breached this duty by paying her premiums with pre-tax rather than post-tax dollars. (Id.) By Plaintiff's own words, the duty owed to her arises from the signing of the policy, or in other words the ERISA plan. This is not a separate duty owed to Plaintiff or a separate contract. See Arditi, 676 F.3d at 299; Stevenson, 609 F.3d at 62. In addition to the duty implicated, the breach itself arises from the plan: the money Plaintiff paid according the purportedly misrepresented plan. Count II, negligence, is preempted for the same reasons (see Compl. ¶ 19 (stating that Hospital Defendants and Prudential owed Plaintiff a duty by virtue of entering a contractual relationship with her when she signed up for disability insurance)), as are Count III, constructive fraud (see id. ¶ 23 ("The Three Defendants had a fiduciary relationship with the Plaintiff by the Three Defendants controlling the creation, management, and payment of the premiums of Plaintiff's disability insurance policy.")) and Count IV, misrepresentation. (See id. ¶ 27 ("The Three Defendants made a misrepresentation to Plaintiff that they would create, manage, and collect premiums for this policy in the way

11

and manner than the Plaintiff wished."); <u>Varela</u>, 644 F. App'x at 31.).

Counts I through IV thus all arise directly from the ERISA-governed plan Plaintiff, a core ERISA entity, entered into with the Hospital Defendants and Prudential, also core ERISA entities. Therefore, they are preempted by ERISA and DISMISSED with prejudice under Rule 12(b)(6). <u>See</u> <u>Costa</u>, 995 F. Supp. 2d at 155 (dismissing state law claims preempted by ERISA with prejudice).

C. Leave to Amend

Plaintiff has withdrawn her claims under the ADA and the United States Constitution, and the Court has dismissed the remaining causes of action over which it has subject matter jurisdiction. The remaining questions are whether Plaintiff shall be given leave to replead the claims implicating ERISA and how to address the remaining State law causes of action related to disability discrimination. When a complaint has been dismissed, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a court may dismiss without leave to amend when amendment would be "futile," or would not survive a motion to dismiss. <u>Hutchison v. Deutsche Bank Sec. Inc.</u>, 647 F.3d 479, 491 (2d Cir. 2011).

Here, Plaintiff is GRANTED leave to replead Counts I through IV as ERISA claims. See Enigma Mgmt. Corp. v. Multiplan, Inc., 994 F. Supp. 2d 290, 305 (E.D.N.Y. 2014). Assuming Plaintiff amends to give this Court federal jurisdiction, the pendant jurisdiction claims may also be amended should Plaintiff be able to cure the alleged insufficiency of those claims as well. Should Plaintiff decline to replead Counts I through IV as ERISA claims, the Court shall decline to exercise pendant jurisdiction over the remaining state claims. See Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). The Court will then REMAND Counts V, VI, and VII to State Court.

Plaintiff shall notify the Court whether she intends to amend her Complaint. If Plaintiff decides to amend, she shall file an Amended Complaint within 45 days of the date of this Memorandum & Order. If she decides not to amend, she shall notify the Court of her decision within the same time period, at which point the Court will remand the state causes of action to State Court.

III.   CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss

are GRANTED.


SO ORDERED.


DATED:     New York, NY
           March 14, 2018


_____
        Deborah A. Batts
United States District Judge