## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Joanna Tulczynska,

                              Plaintiff,

        vs.

Queens Hospital Center, Mount Sinai Health System
Inc., Prudential Insurance Company of America,
Ricardo Lopez, Jean Fleischman and Habibur Rahman,

                              Defendants.

CIVIL ACTION NO.:
17 CV-1669

**VERIFIED
AMENDED COMPLAINT**

Plaintiff, Joanna Tulczynska, as and for her Verified Amended Complaint, by her attorneys, Ilasz & Associates, alleges as follows upon information and belief:

### PRELIMINARY STATEMENT

1.      Plaintiff brings the present action against Defendants for unlawfully discriminating against her based upon her disability in violation of the New York State and New York City Human Rights Laws.

2.      This action also asserts that certain of the Defendants breached their fiduciary duties to the Plaintiff in violation of the ERISA laws causing the Plaintiff to incur significant tax liability on disability insurance benefits.

### THE PARTIES

3.      Plaintiff is an individual residing at 2121 Watersedge Drive in Deltona, Florida.  From 1993 to 2014, Plaintiff worked as a Pulmonologist at Defendant Queens Hospital Center, and as an Associate Professor at Icahn School of Medicine in Manhattan, New York.

4.      Upon information and belief, Defendant Queens Hospital Center ("QHC") is located at 82-68 164th Street, Jamaica, New York 11432 and is a member of Mount Sinai Health System Inc.

5.      Upon information and belief, Defendant Mount Sinai Health System Inc. ("Sinai") is a domestic New York Corporation headquartered at One Gustave L. Levy Place, New York, New York 10029.

6.      Upon information and belief, Defendant Prudential Insurance Company of America ("Prudential") is a corporation incorporated in New Jersey and headquartered in Newark, New Jersey.  Defendant Prudential operates and does business in New York, and has a New York office at 1114 Avenue of the Americas 30th floor, New York, New York 10036.

7.      Upon information and belief, Defendant Ricardo Lopez is a medical doctor on staff and the Chief of Pulmonology at Defendant QHC.

8.      Upon information and belief, Defendant Jean Fleischman is a medical doctor who worked as Chief of Pulmonology at QHC prior to Defendant Lopez becoming the Chief of Pulmonology at Defendant QHC, at which time, she became an Administrator at Defendant QHC.

9.      Upon information and belief, Defendant Habibur Rahman is a medical doctor in the Pulmonology Department of Defendant QHC.

## FACTUAL ALLEGATIONS

### A.      *Background Facts*

10.      Plaintiff was employed by Defendants QHC and Sinai as a doctor of pulmonology from 1993 until she was forced to retire on November 28, 2014.

11.      Plaintiff suffers from Parkinson's Disease.

12.      The Defendants have known of the Plaintiff's condition since 1996.

13.      At all relevant times prior to her retirement on November 28, 2014, the Plaintiff worked full-time as a doctor of Pulmonology at Defendant QHC and Sinai's medical facility.

14.      At all relevant times prior to her retirement on November 28, 2014, the Plaintiff was able to perform and did, in fact, satisfactorily perform each, every and all of her duties as a doctor of

pulmonology.

### B.    Facts Pertaining to Plaintiff's Disability Discrimination Claims

15.    Prior to the summer of 2014, Defendant Fleischman was the Chief of Pulmonology at Defendant QHC and Sinai's medical facility.

16.    In or about the summer of 2014, Defendant Fleischman decided to take a position as an Administrator at Defendant QHC and Sinai's medical facility.

17.    Plaintiff, as the most senior physician in the Pulmonology Department at Defendant QHC and Sinai's medical facility, was next in line to be promoted to the position of Chief of Pulmonology as a result of Defendant Fleischman's decision to give up that position in favor of an Administrator position.

18.    At that time, Defendant Lopez had been employed as a doctor in the pulmonology department of Defendants QHC and Sinai's medical facility for only two (2) years.

19.    Upon information and belief, Defendants Lopez and Rahman knew each other prior to working at Defendants QHC and Sinai and were good, close friends.

20.    Upon information and belief, Defendants Lopez and Fleischman had a personal relationship and were close friends.

21.    On hone particular occasion in July 2014, Defendants Rahman, Lopez and Fleischman made fun of and intentionally embarrassed the Plaintiff because of her Parkinson's Disease just outside of the "Fellows Room" in front of other medical personnel and residents.

22.    Specifically, Defendant Rahman commented in a snarky manner that the Plaintiff, a senior physician with over twenty (20) years of experience as a doctor of pulmonology and next in line for the Chief of Pulmonology position based upon seniority, would never be promoted to the Chief of Pulmonology position because of her Parkinson's Disease, said "we will not work for you" and further stated that the hospital needed another attending physician when the Plaintiff was on duty.

3

23.     Defendant Lopez found it amusing to embarrass the Plaintiff, rolled his eyes and laughed out loud at Defendant Rahman's comment as Plaintiff walked by.

24.     Defendant Fleischman also laughed in unison with Defendants Rahman and Lopez.

25.     Thereafter, in or about August of 2014, Defendant Lopez was promoted to the position of Chief of Pulmonology.

26.     Also, in August of 2014, after Defendant Lopez was promoted to Chief of Pulmonology, the Plaintiff was inside the "Fellows Room" when Defendant Lopez entered the room.

27.     Plaintiff approached Defendant Lopez, then the Chief of Pulmonology, and asked him privately if she would be able to reduce her hours because of her Parkinson's Disease.

28.     Defendant Lopez responded that Plaintiff would not receive any workplace accommodation for her disability, would not receive special treatment and insisted that she work as many hours as any other employee who did not have Parkinson's Disease.

29.     In addition, Defendant Lopez then proceeded to deliberately embarrass the Plaintiff in front of other fellows, residents and medical personnel by asking her questions as if she were a first-year resident.

30.     Again, on another occasion in August of 2014, for no apparent reason, Defendant Lopez announced out loud in the "Fellows Room" - in front of other medical personnel and residents, that Plaintiff would not receive any workplace accommodation for her disability, would not receive special treatment and insisted that she work as many hours as any other employee who did not have Parkinson's Disease.

31.     As a result of Defendants' QHC, Sinai, Lopez, Fleishman and Rahman's conduct as aforesaid, the Plaintiff was subjected to a hostile work environment.

32.     As a result of Defendants' QHC, Sinai, Lopez, Fleishman and Rahman's conduct as aforesaid, the Plaintiff suffered extreme mental and emotional distress.

33.    As a result of Defendants' QHC, Sinai, Lopez, Fleishman and Rahman's hostile and discriminatory conduct as aforesaid, the Plaintiff suffered an aggravation and exacerbation of her condition, Parkinson's Disease.

34.    As a result of Defendants' QHC, Sinai, Lopez, Fleishman and Rahman's hostile and discriminatory conduct as aforesaid, the Plaintiff was bypassed for promotion to the Chief of Pulmonology.

35.    As a result of Defendants' QHC, Sinai, Lopez, Fleishman and Rahman's hostile and discriminatory conduct as aforesaid, the Plaintiff, who wanted to continue working for another five years, was forced to retire early.

## C.    *Facts Pertaining to Plaintiff's ERISA Claim*

36.    Also in or about August of 2014, the Plaintiff sought to enroll in an after-tax disability insurance policy so that, in the event she received future disability payments, she would not have to pay tax on those benefits.

37.    Plaintiff walked into the Human Resources Department at Defendants QHC and Sinai's hospital.  Plaintiff first spoke with the woman who worked in Defendants QHC and Sinai's Human Resources Department at the hospital and told her explicitly that she wanted to enroll in an after-tax disability insurance policy because she did not want to have to pay taxes on any disability payments that she might later receive.

38.    Plaintiff also spoke with the woman's superior, the man who worked in the Defendant QHC and Sinai's Human Resources Department at the hospital.  Plaintiff also told him explicitly that she wanted to enroll in an after-tax disability insurance policy because she did not want to have to pay taxes on any disability payments that she might later receive.

39.    The woman and man in the Human Resources office were in charge of such policies. Each of them repeatedly assured the Plaintiff that she would be enrolled in an after-tax disability

insurance policy so as to avoid tax liability on any disability payment she may receive in the future.

40.     Believing the man and woman in Human Resources to be in charge of Defendants QHC and Sinai's employee disability insurance policies with expertise in employee disability insurance policies, and based upon their assurances that she would be enrolled in an after-tax disability policy that would not result in tax liability imposed on any future disability payments received under the policy, the Plaintiff enrolled in the policy.

41.     The Plaintiff enrolled in what she believed was an after-tax disability policy with Defendant Prudential through her employer, Defendants QHC and Sinai.

42.     Defendant Prudential was Defendants QHC and Sinai's employee disability insurer.

43.     Upon information and belief, the man and woman in Defendant QHC and Sinai's Human Resources Department were authorized representatives or agents of Defendant Prudential who would enroll her in the correct disability policy with Defendant Prudential.

44.     As a result of Defendant Prudential's representatives' assurances that she would be enrolled in an after-tax disability policy, and based upon their expertise in such policies, the Plaintiff purchased the disability policy from Prudential.

45.     Plaintiff retired on November 28, 2014.

46.     Plaintiff subsequently began receiving disability benefits for her Parkinson's Disease.

47.     At all times, the Plaintiff believed that she was enrolled in an after-tax disability policy and that her disability benefits would not incur tax liability.

48.     In or about late October 2016, the Plaintiff received a notice from the IRS dated October 24, 2016 stating that she owed $28,525.38 in back taxes for 2015.

49.     Plaintiff did not know why she owed taxes to the IRS for 2015.

50.     In or about November of 2016, Plaintiff discovered that the back taxes were imposed because of the disability payments she received in 2015.

6

51.     Significantly, in the interim, Plaintiff had continued to receive disability benefits in 2016 and 2017 - and therefore feared she would also owe additional back taxes for such benefits in 2016 and 2017.

52.     Upon discovering that the 2015 back taxes were owed as a result of her disability benefits, Plaintiff repeatedly tried calling Human Resources at Defendants QHC and Sinai but never received a return phone call.  Plaintiff also telephoned Defendant Prudential and was told to speak to the Plan Administrator at Defendants QHC and Sinai.  Defendants QHC, Sinai and Prudential never responded to Plaintiff's communications.

53.     On or about February 7, 2017, Plaintiff commenced the present action predicated upon the underlying facts as aforesaid.

54.     Upon information and belief, Plaintiff received a letter stating that her disability insurance benefits under the policy would end in May of 2017.

## FIRST CAUSE OF ACTION

### DISABILITY DISCRIMINATION

**[Failure to Provide Reasonable Accommodation under the NYSHRL & NYCHRL]**

55.     Plaintiff repeats, reiterates and re-alleges each and every paragraph set forth herein.

56.     At all relevant times, the Plaintiff was an individual with a qualified disability e.g., Parkinson's Disease.

57.     At all relevant times, Defendants QHC, Sinai, Lopez, Fleischman and Rahman were subject to the NYSHRL and NYCHRL.

58.     Defendants QHC and Sinai were aware of Plaintiff's disability since 1996.

59.     At all relevant times, Defendants Lopez, Fleischman and Rahman were aware of Plaintiff's disability.

60.     Defendants QHC, Sinai, Lopez, Fleischman and Rahman failed and refused on at least two (2) separate occasions to provide her with any reasonable accommodation for her disability including but not limited to a reduction of her hours from full-time to part-time.

61.     At all relevant times, said Defendants could have provided the Plaintiff with a reasonable accommodation for her disability such as reduced hours or some other reasonable accommodation.

62.     Plaintiff was forced to work as many hours as any employee who did not have Parkinson's Disease.

63.     At all times, and despite being denied any reasonable accommodation for her disability, Plaintiff did in fact satisfactorily perform each and all of her essential duties as a full-time doctor of pulmonology.

64.     Had the aforesaid Defendants provided the Plaintiff with a reasonable accommodation for her disability, she could have continued to perform each and every essential function of her position as a doctor of pulmonology, as she had done since 1993, for at least five (5) additional years.

65.     Defendants' conduct as aforesaid constituted unlawful discrimination against the Plaintiff based upon her medical condition (Parkinson's Disease) under the New York State Human Rights Law and the New York City Human Rights Law.

66.     As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff suffered extreme mental and emotional distress.

67.     As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff was subjected to an extreme and hostile work environment.

68.     As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff suffered aggravation and exacerbation of her condition.

69.     As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff was bypassed for her rightful promotion to Chief of Pulmonology.

70.     As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff was forced to retire early and was constructively terminated.

71.     As a result of the foregoing unlawful discriminatory conduct, the Plaintiff seeks $5,000,000.00 in damages, punitive damages, the costs of this action, interest and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

### DISABILITY DISCRIMINATION

**[Disparate Treatment/Failure to Promote under the NYSHRL & NYCHRL]**

72.     Plaintiff repeats, reiterates and re-alleges each and every paragraph set forth herein.

73.     Defendants QHC, Sinai, Lopez, Fleischman and Rahman were subject to the NYSHRL and NYCHRL.

74.     Due to her Parkinson's Disease, the Plaintiff was disabled under the meaning of the ADA, NYSHRL and NYCHRL.

75.     Plaintiff was otherwise qualified to perform the essential functions of her job with or without reasonable accommodation.

76.     Although the Plaintiff was next in line for promotion to Chief of Pulmonology pursuant to the rules of promotion at Defendants QHC and Sinai's medical facility, and although the Plaintiff was more than qualified to perform the essential duties of Chief of Pulmonology, Defendants QHC, Sinai, Lopez, Fleischman and Rahman conspired to bypass, and did bypass the Plaintiff, for promotion to Chief of Pulmonology because of her disability in favor of Defendant Lopez, who had only been a doctor at Defendant QHC and Sinai's medical facility for two (2) years.

77.     Indeed, while Plaintiff was in line for the promotion, Defendants Lopez, Fleischman and Rahman continually and repeatedly made insults and derogatory remarks and comments to and about the Plaintiff and her disability, and questioned Plaintiff's reputation – medically, professionally and personally, to and in front of other people including doctors, residents and employees.

78.     In August of 2014, the aforesaid Defendants bypassed Plaintiff for the promotion and instead promoted Defendant Lopez, who had only been a doctor at Defendant QHC and Sinai's medical facility for two (2) years.

79.     Defendants' failure to promote Plaintiff to Chief of Pulmonology was motivated by discriminatory animus based upon Plaintiff's disability.

80.     Defendants' conduct as aforesaid constituted unlawful discrimination against the Plaintiff based upon her medical condition (Parkinson's Disease) under the New York State Human Rights Law and the New York City Human Rights Law.

81.     As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff suffered extreme mental and emotional distress.

82.     As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff was subjected to an extreme and hostile work environment.

83.     As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff suffered aggravation and exacerbation of her condition.

84.     As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff was bypassed for her rightful promotion to Chief of Pulmonology.

85.     As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff was forced to retire early and was constructively terminated.

86.     As a result of Defendants' QHC, Sinai, Lopez, Fleishman and Rahman's hostile and discriminatory conduct as aforesaid, the Plaintiff was bypassed for her rightful promotion to Chief of Pulmonology

87.     As a result of the foregoing unlawful discriminatory conduct, the Plaintiff seeks $5,000,000.00 in damages, punitive damages, the costs of this action, interest and reasonable attorneys' fees.

## THIRD CAUSE OF ACTION

## DISABILITY DISCRIMINATION

### [Disparate Treatment/Constructive Termination under the NYSHRL & NYCHRL]

88.     Plaintiff repeats, reiterates and re-alleges each and every paragraph set forth herein.

89.     Defendants QHC, Sinai, Lopez, Fleischman and Rahman were subject to the NYSHRL and NYCHRL.

90.     Due to her Parkinson's Disease, the Plaintiff was disabled under the meaning of the ADA, NYSHRL and NYCHRL.

91.     Plaintiff was qualified to and did, in fact, satisfactorily perform the essential functions of her position as a pulmonologist with or without reasonable accommodation.

92.     Said Defendants repeatedly made insults and derogatory remarks about the Plaintiff and her disability as previously set forth.

93.     Said Defendants refused to provide the Plaintiff with a reasonable accommodation as previously set forth.

94.     Said Defendants instead insisted that Plaintiff work as any other non-disabled employee and forced her to work full-time without any reasonable accommodation for her disability as previously set forth.

95.     Said Defendants' unlawful discriminatory conduct forced Plaintiff to work full-time without any reasonable accommodation.

96.    Said Defendants' unlawful discriminatory conduct forced Plaintiff to work under extreme and hostile conditions.

97.    Said Defendants' conduct was motivated by discriminatory animus based on Plaintiff's disability.

98.    But for said Defendants' unlawful discriminatory conduct as aforesaid, the Plaintiff would have continued to work for at least another five (5) years.

99.    Defendants' conduct as aforesaid constituted unlawful discrimination against the Plaintiff based upon her medical condition (Parkinson's Disease) under the New York State Human Rights Law and the New York City Human Rights Law.

100.    As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff suffered extreme mental and emotional distress.

101.    As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff was subjected to an extreme and hostile work environment.

102.    As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff suffered aggravation and exacerbation of her condition.

103.    As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff was bypassed for her rightful promotion to Chief of Pulmonology.

104.    As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff was forced to retire early and was constructively terminated.

105.    As a result of the foregoing unlawful discriminatory conduct, the Plaintiff seeks $5,000,000.00 in damages, punitive damages, the costs of this action, interest and reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION

## DISABILITY DISCRIMINATION

## [Hostile Work Environment under the NYSHRL & NYCHRL]

106.    Plaintiff repeats, reiterates and re-alleges each and every paragraph set forth herein.

107.    Due to her Parkinson's Disease, the Plaintiff was disabled under the meaning of the ADA, NYSHRL and NYCHRL and is a member of a protected class.

108.    Plaintiff was subjected to the unwelcome speech and conduct of Defendants Lopez, Fleischman and Rahman based upon her membership in that class as previously set forth.

109.    Defendant QHC, Sinai, Lopez, Fleischman and Rahman's conduct was sufficiently severe to create a hostile work environment.

110.    Said Defendants' conduct was sufficiently pervasive to create a hostile work environment.

111.    Said Defendants are liable for the previously described unlawful and discriminatory conduct and speech.

112.    Said Defendants repeatedly made insults and derogatory remarks about the Plaintiff's disability as previously set forth.

113.    Said Defendants' conduct was motivated by discriminatory animus based on Plaintiff's disability.

114.    Said Defendants' conduct as aforesaid constituted unlawful discrimination against the Plaintiff based upon her medical condition (Parkinson's Disease) under the New York State Human Rights Law and the New York City Human Rights Law.

115.    As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff was subjected to an extreme and hostile work environment.

116.    As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff suffered extreme mental and emotional distress.

117.    As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff suffered aggravation and exacerbation of her condition.

118.    As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff was bypassed for her rightful promotion to Chief of Pulmonology.

119.    As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff was forced to retire early and was constructively terminated.

120.    As a result of the foregoing unlawful discriminatory conduct, the Plaintiff seeks $5,000,000.00 in damages, punitive damages, the costs of this action, interest and reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION

### DISABILITY DISCRIMINATION

### [Wrongful Termination under the NYSHRL & NYCHRL]

121.    Plaintiff repeats, reiterates and re-alleges each and every paragraph set forth herein.

122.    Due to her Parkinson's Disease, the Plaintiff was disabled under the meaning of the ADA, NYSHRL and NYCHRL, and is a member of a protected class.

123.    Plaintiff was satisfactorily performing her duties as a Pulmonologist.

124.    Defendant QHC, Sinai, Lopez, Fleischman and Rahman's discriminatory conduct as aforesaid lead to Plaintiff's constructive and wrongful termination.

125.    Said Defendants' conduct was motivated by discriminatory animus based on Plaintiff's disability and membership in a protected class.

126.    Said Defendants' conduct as aforesaid constituted unlawful discrimination against the Plaintiff based upon her medical condition (Parkinson's Disease) under the New York State Human Rights Law and the New York City Human Rights Law.

127.    As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff suffered extreme mental and emotional distress.

128.    As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff was subjected to an extreme and hostile work environment.

129.    As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff suffered aggravation and exacerbation of her condition.

130.    As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff was unlawfully bypassed for her rightful promotion to Chief of Pulmonology.

131.    As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff was forced to retire early and was constructively, wrongfully terminated.

132.    As a result of the foregoing unlawful discriminatory conduct, the Plaintiff seeks $5,000,000.00 in damages, punitive damages, the costs of this action, interest and reasonable attorneys' fees.

## SIXTH CAUSE OF ACTION

## DISABILITY DISCRIMINATION

## [Aiding & Abetting under the NYSHRL & NYCHRL]

133.    Plaintiff repeats, reiterates and re-alleges each and every paragraph set forth herein.

134.    Individual Defendants Lopez, Fleischman and Rahman each engaged in unlawful discriminatory conduct toward the Plaintiff based on her disability.

135.    Said Defendants made derogatory remarks about the Plaintiff based on her disability as aforesaid.

136.    Said Defendants failed and refused to provide Plaintiff with a reasonable accommodation as aforesaid.

137.    Said Defendants conspired to wrongfully deny Plaintiff the position of Chief of Pulmonology based upon her disability as aforesaid.

138.    Said Defendants intentionally and knowingly created a hostile work environment for the Plaintiff due to her disability.

139.    Said Defendants' conduct was motivated by discriminatory animus based on Plaintiff's disability.

140.    Said Defendants' conduct as aforesaid constituted unlawful discrimination against the Plaintiff based upon her medical condition (Parkinson's Disease) under the New York State Human Rights Law and the New York City Human Rights Law.

141.    As a result of said Defendants' unlawful discrimination as aforesaid, the Plaintiff was subjected to an extreme and hostile work environment.

142.    As a result of said Defendants' unlawful discrimination as aforesaid, the Plaintiff suffered extreme mental and emotional distress.

143.    As a result of said Defendants' unlawful discrimination as aforesaid, the Plaintiff suffered aggravation and exacerbation of her condition.

144.    As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff was unlawfully bypassed for her rightful promotion to Chief of Pulmonology.

145.    As a result of Defendants' unlawful discrimination as aforesaid, the Plaintiff was forced to retire early and was constructively terminated.

146.    As a result of the foregoing unlawful discriminatory conduct, the Plaintiff seeks $5,000,000.00 in damages, punitive damages, the costs of this action, interest and reasonable attorneys' fees.

## SEVENTH CAUSE OF ACTION

### ERISA VIOLATION

### [Breach of Fiduciary Duty/Misrepresentation]

147.    Plaintiff repeats, reiterates and re-alleges each and every paragraph set forth herein.

148.    In August of 2014, the Plaintiff enrolled in a disability insurance plan with Defendant Prudential, through her employer, Defendants QHC and Sinai.

149.    Defendants QHC, Sinai and Prudential were fiduciaries of the plan in which the Plaintiff was enrolled.

150.    Prior to enrolling in the plan, Plaintiff explicitly informed Defendants QHC, Sinai and Prudential that she wanted to enroll in an after-tax disability insurance policy in order to avoid having to pay taxes on any disability payments that she might later receive as a result of her disability, e.g., Parkinson's disease.

151.    Defendants QHC, Sinai and Prudential agreed to enroll the Plaintiff in an after-tax disability insurance policy.

152.    Relying on the expertise and assurances of Defendants QHC, Sinai and Prudential, Plaintiff enrolled in what she believed was an after-tax disability insurance plan.

153.    On November 28, 2014, the Plaintiff retired.

154.    Thereafter, Plaintiff began receiving disability benefits under the plan for her Parkinson's Disease.

155.    At all times, Plaintiff reasonably believed that she was enrolled in an after-tax policy and that her benefits would not incur tax liability.

156.    In late October 2016, Plaintiff received a notice from the Internal Revenue Service that she owed $28,525.38 in back-taxes for 2015.

157.    In November of 2016, Plaintiff learned that said taxes were imposed on the disability payments that she received under the plan in 2015.

158.    In the interim, Plaintiff had continued to receive disability benefits in 2016 and 2017 and feared that she would owe additional back taxes for such benefits in 2016 and 2017.

159.    As previously stated, Plaintiff's attempts to contact said Defendants regarding the policy benefits and back-taxes were unsuccessful.

160.    Said Defendants misrepresented to the Plaintiff that she would be and was, in fact, enrolled in an after-tax disability insurance policy so as to avoid being taxed on any disability benefits.

161.    By enrolling the Plaintiff in a pre-tax disability insurance plan, Defendants QHC, Sinai and Prudential breached their fiduciary duties to the Plaintiff.

162.    Plaintiff reasonably relied on said Defendants' expertise and assurances to her detriment.

163.    As a result of Defendants' breach of their fiduciary duties and misrepresentations as aforesaid, the Plaintiff has been damaged in the amount of $28,525.38 in back-taxes for 2015, and continuing into 2016 and 2017, plus interest, penalties and any other charges imposed by the IRS, the New York State Department of Taxation, the New York City Department of Taxation, or those imposed by any other jurisdiction or locality.

164.    As a result of Defendants QHC, Sinai and Prudential's misrepresentation and breach of fiduciary duty to her as aforesaid, the Plaintiff also requests the costs of this action, interest and reasonable attorneys' fees.

**WHEREFORE**, Plaintiff demands judgment in an amount to be determined at trial awarding Plaintiff:

(a)    $5,000,000, plus punitive damages, the costs of this action, interest and reasonable attorneys' fees from Defendants QHC, Sinai, Lopez, Fleischman and Rahman for their unlawful discrimination against Plaintiff based on her disability;

(b)    $28,525.35 in restitution, surcharge and/or other compensation for 2015, and continuing into 2016 and 2017, plus interest, penalties and any other charges imposed by the IRS, the New York State Department of Taxation, the New York City Department of Taxation, or those imposed by any other jurisdiction or locality, as well as, the costs of this action and reasonable attorneys' fees, based upon Defendants' QHC, Sinai and

Prudential's misrepresentation and breach of fiduciary duty to Plaintiff based on their

failure to enroll Plaintiff in an after-tax disability policy; and

(c) Such other, further and different relief as the Court deems just and proper.

Dated: April 25, 2018
        New York, New York

By:   /s/ Livius Ilasz
        Ilasz & Associates
        Attorney for Plaintiff
        Joanna Tulczynska
        One Maiden Lane – 9th Floor
        New York, New York 10038
        (212) 480-2222

## **VERIFICATION**

Livius Ilasz, an attorney duly admitted to practice law in the State of New York, affirms the following under penalty of perjury:

1. I am the principal of Ilasz & Associates, attorneys for the Plaintiff in the within action.

2. I have read the foregoing Amended Complaint and know the contents thereof and believe the matters alleged to be true, or upon information and belief to be true.

3. I am making this Verification because the Plaintiff resides outside of the State of New York.

4. The source of my information and grounds of my belief are communications with the Plaintiff, papers, reports, and investigations contained in the file.

Dated: April 25, 2018
     New York, New York                                    __ /s/ Livius Ilasz____
                                                                      LIVIUS ILASZ

## <u>CERTIFICATE OF SERVICE</u>

Livius Ilasz, an attorney, does hereby certify that I have caused a true and correct copy of the attached Amended Verified Complaint to be filed using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of records on April 26, 2018.

  /s/ Livius Ilasz    
LIVIUS ILASZ

To: All Counsel of Record (via ECF)