SUPREME COURT DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
JOANNA TULCZYNSKA,

                No. 17 CV 1669 (DAB)

                 Plaintiff,

    -against-


QUEENS HOSPITAL CENTER, MOUNT SINAI HEALTH
SYSTEM INC., PRUDENTIAL INSURANCE COMPANY
OF AMERICA, ROSELYN MARQUEZ, RICARDO LOPEZ,
JEAN FLEISHCMAN, HABIBUR RAHMAN,

                 Defendants.
-------------------------------------------------------------------------------X


**PLAINTIFF JOANNA TULCZYNSKA'S MEMORANDUM OF LAW**
**IN OPPOSITION TO THE DEFENDANTS'**
**<u>PRE-ANSWER MOTIONS TO DISMISS THE AMENDED COMPLAINT</u>**




Dated: November 10, 2018

ILASZ & ASSOCIATES
COUNSEL FOR PLAINTIFF
JOANNA TULCZYNSKA
1 MAIDEN LANE
NEW YORK, NEW YORK 10038
(212) 480-2222

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ..................................................................................................................... 2

Point I
The Hospital Defendants' Motion To Dismiss Plaintiff's Disability Discrimination
Claims Under The NYSHRL & NYCHRL Must Be Denied ................................... 2

A. Plaintiff's Disability Discrimination Claims Are Not Refuted By "Documentary
Evidence" ....................................................................................................... 2

B. Plaintiff's Disability Discrimination Claims Are Not Time-Barred ................. 3

C. Plaintiff's Disability Discrimination Claims Plead Causes of Action .............. 5

Point II
The Hospital Defendants' Motion To Dismiss Plaintiff's ERISA Claim Must Be
Denied ......................................................................................................................... 7

Point III
Defendant Prudential's Motion To Dismiss Plaintiff's ERISA Claim Must Be
Denied ......................................................................................................................... 8

A. The Allegations State An ERISA Cause Of Action Against Defendant
Prudential ....................................................................................................... 8

B. Facts Exclusively Within Defendant Prudential's Knowledge ................10

C. The Group Contract & Booklet-Certificate Should Not Be Considered .... 11

D. The Group Contract & Booklet-Certificate Do Not Undercut Plaintiff's
Claim ............................................................................................................ 12

E. Defendant Prudential Breached Its Fiduciary Duties To Plaintiff Under
ERISA .......................................................................................................... 14

F. Defendant Prudential Was Performing A Fiduciary Function .................. 17

Point IV
Equitable Tolling ...................................................................................................... 22

CONCLUSION ................................................................................................................ 28

## PRELIMINARY STATEMENT

The plaintiff began her employment at defendants Queens Hospital Center ("QHC") and Mount Sinai Health System Inc. ("Sinai") in 1993 as a doctor of pulmonology. By 1996, she was diagnosed with Parkinson's Disease. Defendants QHC and Sinai were immediately notified of plaintiff's disability. For decades thereafter, the plaintiff satisfactorily, capably and competently performed her duties as a doctor of pulmonology. However, after defendants QHC and Sinai, and certain individual defendant Doctors, defendants Ricardo Lopez ("Lopez"), Jean Fleischman ("Fleischman") and Habibur Rahman ("Rahman") (collectively, the "Hospital Defendants"), perpetrated several acts of unlawful disability discrimination against plaintiff that, in turn, aggravated and exacerbated her disability until she was forced to take leave.

In her Amended Complaint, the plaintiff brings six disability discrimination claims under the NYSHRL and NYCHRL against the Hospital Defendants based on failure to provide a reasonable accommodation, disparate treatment, failure to promote, hostile work environment, constructive/wrongful termination and aiding and abetting. Plaintiff also brings ERISA claims against defendants QHC/Sinai and defendant Prudential Insurance Company of America ("Prudential") for causing her to incur tax liability on her disability payments despite her explicit requests otherwise.

For a full recitation of the facts alleged in support of her claims, the plaintiff respectfully refers this Court to the Amended Complaint – a copy of which was not submitted by any of the Defendants in support of their respective pre-answer motions to dismiss it. *See* a copy of the Amended Complaint annexed hereto as Exhibit 1 ["Amended Complaint"].

For the reasons set forth herein, both the Hospital Defendants' and Defendant Prudential's respective pre-answer motions to dismiss the Amended Complaint must be denied.

1

## ARGUMENT

In determining a 3211(a) motion, the court must liberally construe the complaint and accept the facts alleged in the complaint and any submission in opposition to the dismissal motion. *511 W. 232nd Owners Corp. v. Jennifer Realty Co.,* 98 N.Y.2d 144, 151-52 (2002). The court must also accord the plaintiff the benefit of every possible favorable inference. *511 W. 232nd Owners Corp. v. Jennifer Realty Co.,* 98 N.Y.2d 144, 152 (2002).

## POINT I

### The Hospital Defendants' Motion To Dismiss Plaintiff's Disability Discrimination Claims Under The NYSHRL & NYCHRL Must Be Denied

For the reasons that follow, the Hospital Defendants' motion to dismiss the plaintiff's disability discrimination claims in the Amended Complaint based on documentary evidence, the statute of limitations and/or failure to state a cause of action must be denied.

**A.** ***Plaintiff's Disability Discrimination Claims Are Not Refuted By Documentary Evidence***

First, the Hospital Defendants argue that the plaintiff's claims of disability discrimination under the NYSHRL and NYCHRL are barred by "documentary evidence" purportedly establishing the expiration of the applicable statute of limitations with respect to such claims. The Hospital Defendants support this argument with their submission of *unauthenticated* documents allegedly establishing that defendant Dr. Lopez was promoted to Chief of Pulmonology in October of 2011, that plaintiff went on medical leave in December of 2013 and on long term disability in June of 2014.

Relying on such unauthenticated documents, the Hospital Defendants assert that the discriminatory acts alleged in the amended complaint occurred no later than December 2013 and,

2

thus, because the plaintiff did not commence this action until February of 2017, her disability discrimination claims are time barred by the three year statute of limitations.

A motion to dismiss under CPLR 3211(a)(1) should be granted only where the "documentary evidence" that forms the basis of the defense utterly refutes the plaintiff's factual allegations, and conclusively disposes of the plaintiff's claims as a matter of law. *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 326 (2002); *Held v. Kaufman*, 91 N.Y.2d 425, 430-431 (1998). To qualify as documentary evidence, the evidence must be unambiguous and of undisputed authenticity. *Flushing Sav. Bank, FSB v. Siunykalimi*, 94 A.D.3d 807 (2d Dep't 2012); *Fontanetta v. John Doe 1*, 73 A.D.3d 78, 86 (2d Dep't 2010). Neither affidavits, deposition testimony, nor letters are considered documentary evidence within the intendment of CPLR 3211(a)(1). *Feldshteyn v. Brighton Beach 2012 LLC*, 153 A.D.3d 670 (2d Dep't 2017); *Rodolico v. Rubin & Licatesi P.C.*, 114 A.D.3d 923 (2d Dep't 2014); *Granada Condominium III Assn. v. Palomino*, 78 A.D.3d 996, 997 (2d Dep't 2010).

Here, the Hospital Defendants' *unauthenticated submissions – e.g., internal personnel action forms*, do not qualify as "documentary evidence" under CPLR 3211(a)(1). As such, same should not be considered by this Court. In any event, the purported "documentary evidence" is flatly contradicted by the allegations in the amended complaint and plaintiff's allegations must be accepted as true for the purposes of the Hospital Defendants' CPLR 3211(a) motion to dismiss. Accordingly, the Hospital Defendants' motion to dismiss based upon "documentary evidence" must be denied.

**B.   *Plaintiff's Disability Discrimination Claims Are Not Time-Barred***

Upon a 3211(a)(5) motion to dismiss a complaint as time barred under the applicable statute of limitations, the initial burden is on the movant to make a prima facie showing that the

time in which to bring the claim has run. *Romanelli v. DiSilvio,* 76 A.D.3d 553, 554 (2d Dep't 2010). The burden then shifts to the plaintiff to show that his or her cause of action falls within an exception to the statute of limitations or raise a question of fact as to whether such an exception applies. *Romanelli v. DiSilvio,* 76 A.D.3d 553, 554 (2d Dep't 2010).

To make a prima facie showing, the defendant must establish *inter alia* when the plaintiff's cause of action accrued. *In re Schwartz,* 44 A.D.3d 779 (2d Dep't 2007). In general, a cause of action accrues, triggering commencement of the limitations period, when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief. *Gaidon v. Guardian Life Ins. Co. of Am.,* 96 N.Y.2d 201, 210 (2001).

Here, the Hospital Defendants have failed to establish that the three year statute of limitations period for commencing her disability discrimination claims under the NYSHRL and NYCHRL expired since their statute of limitations defense is based squarely on the *unauthenticated internal personnel action forms* as previously discussed - documents that *do not* prove that the alleged acts of discrimination occurred no later than December 2013 and, as such, more than three years prior to her February 2017 commencement of this action.

Since the documents upon which the Hospital Defendants rely are unauthenticated, do not qualify as documentary evidence and are contradicted by the allegations in the amended complaint, the Hospital Defendants have failed to meet their burden of establishing that the statute of limitations on plaintiff's disability discrimination claims ran prior to plaintiff's February 2017 commencement of this action. In any event, once again, the plaintiff's contradictory allegations must be accepted as true. Accordingly, the Hospital Defendants' motion to dismiss based upon the alleged expiration of the applicable statute of limitations must also be denied.

**C.**     ***Plaintiff's Disability Discrimination Claims State A Cause Of Action***

On a motion to dismiss pursuant to CPLR 3211(a)(7), the court must accept the facts as alleged in the complaint as true, accord the plaintiff the benefit of every possible inference, and determine only whether the facts as alleged fit within any cognizable legal theory. *Nonnon v. City of New York,* 9 N.Y.3d 825, 827 (2007); *Leon v. Martinez,* 84 N.Y.2d 83, 87 (1994).  Moreover, the court may consider any affidavits submitted by the plaintiff to remedy any defects in the complaint, and upon considering such an affidavit, the facts alleged therein must also be assumed to be true. *Janusonis v. Carauskas,* 137 A.D.3d 1218, 1219 (2d Dep't 2016); *Kopelowitz & Co. Inc. v. Mann*, 83 A.D.3d 793, 797 (2d Dep't 2011).

Where evidentiary material is submitted and considered on a motion to dismiss a complaint pursuant to CPLR 3211(a)(7), the question becomes whether the plaintiff has a cause of action, not whether the plaintiff has stated one, and unless it has been shown that a material fact as claimed by the plaintiff to be one is not a fact at all, and unless it can be said that no significant dispute exists regarding it, dismissal should not eventuate. *Rad & D'Aprile Inc. v. Arnell Constr. Corp.,* 159 A.D.3d 971, 972 (2d Dep't 2018).

Here, the Hospital Defendants alternatively argue that the plaintiff's disability discrimination claims fail to state a cause of action.  Once again, the Hospital Defendants' arguments rests squarely on the unauthenticated documents submitted in support of their motion to dismiss.

Relying on unauthenticated documents contradicted by the allegations in the amended complaint, the Hospital Defendants assert that the plaintiff went on leave in December of 2013 because of her Parkinson's Disease and that, because she went on leave due to Parkinson's Disease (allegedly in December of 2013), plaintiff will be unable to establish a requisite element of her

claims for failure to accommodate, failure to promote and wrongful termination – e.g., that she was capable of performing her essential duties as a doctor of pulmonology.

Significantly however, the Hospital Defendants' argument wholly ignores the plaintiff's allegations that she was perfectly capable of satisfactorily performing her duties as a doctor of pulmonology ***at the time*** that she sought the reasonable accommodation, was passed over for the promotion to Chief of Pulmonology in favor of a junior physician (defendant Dr. Lopez) and was subjected to a hostile work environment; later resulting in the aggravation and exacerbation of her Parkinson's Disease and ultimately leading to her termination.

As such, the Hospital Defendants' pre-answer motion to dismiss plaintiff's disability discrimination claims based on a failure to provide reasonable accommodation, failure to promote and wrongful termination must be denied.

Finally, the Hospital Defendants assert that plaintiff's hostile work environment claim fails to state a cause of action. They insist that the discriminatory remarks made to her by the individual defendant doctors, as alleged in the amended complaint, constitute non-actionable "petty slights." For the reasons that follow, counsel for the Hospital Defendants' self-serving opinion in this regard is insufficient grounds for dismissal of plaintiff's hostile work environment claim.

To state a hostile work environment claim under the NYCHRL, a plaintiff need only allege differential treatment of any degree based on a discriminatory motive. *Awad v. City of New York*, 2014 U.S. Dist. LEXIS 63234 (E.D.N.Y. 2014) citing *Gorokhovsky v. N.Y.S. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014). Even a single comment may be actionable under the NYCHRL in appropriate circumstances. *Id.* A claim under the NYCHRL should only be dismissed if plaintiff does not allege behavior by defendants that cannot be said to fall within the broad range of conduct

6

between severe and persuasive on the one hand and a petty slight or trivial inconvenience on the other. *Id.* quoting *Hernandez v. Kaisman*, 103 A.D.3d 106 (1st Dep't 2012).

Here, the plaintiff repeatedly alleged that she was treated differently than other doctors because of her disability – including *inter alia* being insulted and ridiculed for her disability in public by a clique of individual defendant doctors, publicly denied and ridiculed by the individual defendant doctors about her request for a reasonable accommodation for her disability and wrongfully passed over for the promotion to which she was entitled due to her disability. Such differential treatment is more than a "petty slight or trivial inconvenience." *See Lebowitz v. New York City Dep't of Educ.*, 2017 U.S. Dist. LEXIS 50950 (E.D.N.Y. 2017). As such, the Hospital Defendants' pre-answer motion to dismiss plaintiff's hostile work environment claims for failure to state a cause of action must be denied.

For the foregoing reasons, the Hospital Defendants' pre-answer motion to dismiss the plaintiff's disability discrimination claims based on documentary evidence, the statute of limitations and/or failure to state a cause of action must be denied.

## POINT II

### The Hospital Defendants' Motion To Dismiss Plaintiff's ERISA Claim Must Be Denied

The Hospital Defendants argue that defendant Sinai was the disability insurance Plan Administrator and, as such, was only responsible for general plan administration including enrollment. Assuming the existence of defendant Sinai's fiduciary duty to plaintiff under ERISA for the purposes of the plan administration including enrollment, the Hospital Defendants assert that – contrary to the allegations in the amended complaint, the plaintiff was indeed enrolled in the after-tax disability policy that she requested.

The Hospital Defendants then argue that *if* the plaintiff later received her disability benefits *pre-tax* (as alleged in the amended complaint), there was an error in the *payment* of her benefits by defendant Prudential (the Claims Administrator), not an error in *enrollment* into the correct plan by defendant Sinai (the Plan Administrator). Thus, according to the Hospital Defendants, plaintiff has failed to state an ERISA claim against them.

Initially, it must be noted that the Hospital Defendants argument involves lots of unestablished conjecture. In any event, their supposed proof that defendant Sinai enrolled plaintiff into the after-tax policy she requested consists of yet another *internal unauthenticated document lacking any explanation of its contents*. See Exhibit G to the Hospital Defendants' motion.

Since the unauthenticated, unexplained document at Exhibit G does not establish that plaintiff was in fact enrolled in an after-tax policy, because the contrary allegations in the amended complaint must be assumed true and because the Hospital Defendants do not actually argue that they did not owe plaintiff a fiduciary duty with respect to the plan, the Hospital Defendants' pre-answer motion to dismiss the ERISA claim must be denied.

## POINT III

### Defendant Prudential's Motion To Dismiss Plaintiff's ERISA Claim Must Be Denied

#### A.    *The Allegations Against Defendant Prudential State A Claim Against It Under ERISA*

Contrary to defendant Prudential's assertion that the amended complaint fails to allege any facts supporting plaintiff's ERISA claim against *it* (as opposed to those alleged against defendants QHC and Sinai), the amended complaint does indeed allege that defendant Prudential (as opposed to only defendants QHC and Sinai) breached its fiduciary duty – e.g., committed the acts and/or omissions that resulted in her having to pay tax on her disability benefit payments. *See* Exhibit 1 [Amended Complaint] at ¶¶36-54, 147-164.

8

In her amended complaint, the plaintiff alleges that *defendant Prudential* was a fiduciary of the disability insurance plan (¶149), that she explicitly informed *defendant Prudential* that she wished to enroll in an after-tax policy (¶150), that *defendant Prudential* agreed to enroll plaintiff into the after-tax (versus pre-tax policy) (¶151), that she relied on the expertise and assurances of *defendant Prudential* (¶152, 162), that *defendant Prudential* enrolled her in the wrong policy (¶160), that *defendant Prudential* breached its fiduciary duty by enrolling her into the wrong policy (¶161) and that she suffered damages as a result in the form of having to pay tax on her disability payments (¶163).  *See* Exhibit 1 [Amended Complaint] at ¶¶36-54, 147-164.

Plaintiff further alleges that, upon her unexpected discovery that she owed taxes on the disability payments, she repeatedly tried to communicate with *defendant Prudential* to no avail, was instead directed to contact the plan administrator at defendants QHC and Sinai and was otherwise ignored by *defendant Prudential* (¶¶52, 159).  *See* Exhibit 1 [Amended Complaint] at ¶¶36-54, 147-164.

Moreover, the amended complaint alleges that the plaintiff communicated with two individuals in the Human Resources office at defendants QHC/Sinai, that said individuals were agents and/or employees of defendants QHC, Sinai *and/or Prudential*, that upon discovery of the error *defendant Prudential would not return her telephone calls, told her to contact the Plan Administrator (defendant QHC) and otherwise ignored her* (¶¶52, 159), that she *explicitly informed defendant Prudential that she wanted to enroll in an after-tax policy, that defendant Prudential agreed to enroll her in an after-tax policy, that she relied on defendant Prudential's expertise and reasonably believed that defendant Prudential enrolled her in the after-tax policy she requested.  See* Exhibit 1 [Amended Complaint] at ¶¶36-54, 147-164.

In light of the foregoing, the amended complaint alleges several factual bases for holding defendant Prudential liable under ERISA.  As such, defendant Prudential's pre-answer motion to dismiss the amended complaint must be denied.

**B.      *Facts Exclusively Within Defendant Prudential's Knowledge***

The plaintiff's inability to specifically identify individuals referenced in the amended complaint *is not grounds for granting defendant Prudential's pre-answer motion to dismiss* - since their identities are within the exclusive knowledge of defendants Prudential, QHC and Sinai.

It is also significant that the Hospital Defendants have asserted that plaintiff was, in fact, enrolled in an after-tax policy and, thus, if taxes were imposed on the disability payments, it was ***defendant Prudential that erred in the payment of her benefits***. *See* the Robins Memorandum of Law in Support of the Hospital Defendants' Motion at P11.  In fact, the Hospital Defendants submitted an (albeit unauthenticated) document purporting to be plaintiff's long term disability election as <u>Exhibit G</u> to their motion - allegedly showing that plaintiff was enrolled in an after-tax policy as she requested.

As with the identity of the individual employees and/or agents of the defendants - including defendant Prudential, with whom the plaintiff communicated about the plan, there are surely internal documents in the exclusive knowledge and possession of defendant Prudential relevant to plaintiff's claim albeit about which the plaintiff is unaware at this stage.  In any case, defendant Prudential's assertion - that plaintiff has failed to state a claim against it under ERISA because she failed to allege specific facts that are exclusively within the knowledge, possession or control of defendant Prudential and defendants QHC and Sinai, is meritless.

Moreover, on a pre-answer motion to dismiss, the allegations in the complaint are deemed true and the plaintiff is afforded the benefit of every favorable inference.  Accordingly, defendant

Prudential's pre-answer motion to dismiss the amended complaint - on the basis that plaintiff failed to allege facts supporting her ERISA claim against it, must be denied.

**C.     *The Group Contract and Booklet-Certificate Should Not Be Considered***

Defendant Prudential also argues that plaintiff's claim fails because the "general provisions" of the purported "Booklet-Certificate" and page 2 of the "Summary Plan Description" ("SPD") state that plaintiff's employer is not an agent of defendant Prudential.[1]  *See* Exhibit B ["Booklet-Certificate" at P11 and "Summary Plan Description" at P2].

First, since plaintiff in this case is not relying *solely* on the purported "Group Contract" or "Booklet-Certificate" to support her ERISA claim against defendant Prudential, plaintiff respectfully submits that this Court should not consider said *unauthenticated* documents submitted by defendant Prudential in support of its motion – e.g., the purported "Group Contract" and "Booklet-Certificate" annexed to its motion as Exhibits A & B, respectively.

The Second Circuit has stated that a document not expressly incorporated by reference in a complaint is nevertheless integral to the complaint and, accordingly, a fair object of consideration on a motion to dismiss.  *Goel v. Bunge*, 820 F.3d 554, 559 (2d Cir. 2016).  A document is integral to the complaint where the complaint relies heavily upon its terms and effect.  *Id* (citation omitted).  In most instances in which this exception is recognized, the incorporated material is a contract or

---

[1] *See* e.g.: (A) "For purposes of the Group Contract, your Employer acts on its own behalf. Under no circumstances will your Employer be deemed the agent of Prudential".  *See* Defendant Prudential Exhibit B [purported "general provisions" of the purported "Booklet-Certificate"] at P11; and (B) "This Group Contract underwritten by the Prudential Insurance Company of America provides insured benefits under your Employer's ERISA plan(s).  For all purposes of this Group Contract, the Employer/Policyholder acts on its own behalf or as an agent of its employees.  Under no circumstances will the Employer/Policyholder be deemed the agent of the Prudential Insurance Company of America, *absent a written authorization of such status executed between the Employer/Policyholder and the Prudential Insurance Company of America.*  Nothing in these documents shall, *of themselves*, be deemed to be such written execution."  *See* Defendant Prudential Exhibit B [purported "Summary Plan Description"] at P2.

other legal document containing obligations on which the plaintiff's complaint stands or falls, but which for some reason, usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim – was not attached to the complaint. *Id* (citation omitted).

Here, the foregoing exception is inapplicable.  First, the "Group Contract" was drafted by defendant Prudential and agreed to by and between defendant Prudential and defendants QHC/Sinai.  Neither the plaintiff nor any member of her class had anything to do with it, or any say about it.  Second, the "Group Contract" fails to address any concerns, rights or remedies available to employees participating in a plan, let alone the specific disability benefit plan at issue in this case, the issue of tax elections on benefits or mistakes relating thereto.  Third, there is no indication or assurance that the "Entire Contract" documents, including any amendments thereto, have been included with defendant Prudential's submission. *See* Exhibit A ["Group Contract"] at P6 ¶H containing a long list of documents purportedly comprising the "Entire Contract".

Because the plaintiff does not rely solely on the purported "Group Contract" and "Booklet-Certificate" – as same are devoid of any language pertaining to the pre vs. post tax benefit payments at issue in this case, the foregoing exception is inapplicable.  In light of the exception's inapplicability, and because defendant Prudential has failed to authenticate the documents it asks the Court to consider, same should be disregarded by the Court for the purpose of this motion.

**D.**      ***The Group Contract and Booklet-Certificate Do Not Undercut Plaintiff's Claim***

In any event, contrary to defendant Prudential's assertion, the language on which it relies does not "wholly undercut" plaintiff's position.  The amended complaint does *not* merely assert that defendant Prudential's liability is entirely based on plaintiff's communications with the unidentified man and woman in the Human Resources Department as counsel repeatedly contends. The amended complaint also does *not* solely base defendant Prudential's liability on an allegation

that plaintiff communicated solely with defendant QHC/Sinai workers acting as defendant Prudential's agents as counsel repeatedly contends.

In addition, defendant Prudential's assertion conveniently ignores plaintiff's allegations against it concerning her inability to obtain any assistance or answers from defendant Prudential as to how the error occurred after she was notified of the complained of tax liability by the IRS.

Again, the amended complaint alleges that plaintiff explicitly informed *defendant Prudential* that she wanted to enroll in an after-tax policy, that *defendant Prudential* agreed to enroll her in an after-tax policy, that she relied on *defendant Prudential's* expertise and reasonably believed that *defendant Prudential* enrolled her in the after-tax policy she requested, that she communicated with individuals who were agents and/or employees of defendants QHC, Sinai and/or *Prudential*, that upon discovery of the error, *defendant Prudential* would not return her telephone calls, told her to contact the Plan Administrator (defendant QHC) and *defendant Prudential* otherwise ignored her. *See* Exhibit 1 [Amended Complaint] at ¶¶36-54, 147-164.

Since, contrary to defendant Prudential's contention, the plaintiff's ERISA claim against it does not rest on solely on an allegation that its liability is limited to acts of defendant QHC and Sinai's employees acting as agents for defendant Prudential, the unauthenticated submissions[2] -

---

[2] It should be noted that there is no indication as to whether defendant Prudential's purported submissions contain a complete copy of all relevant documents, amendments or written authorizations as set forth at Page 2 of the purported "Summary Plan Description" which states: "This Group Contract underwritten by the Prudential Insurance Company of America provides insured benefits under your Employer's ERISA plan(s). For all purposes of this Group Contract, the Employer/Policyholder acts on its own behalf or as an agent of its employees. Under no circumstances will the Employer/Policyholder be deemed the agent of the Prudential Insurance Company of America, ***absent a written authorization of such status executed between the Employer/Policyholder and the Prudential Insurance Company of America***. Nothing in these documents shall, *of themselves*, be deemed to be such written execution." *See* Defendant Prudential Exhibit B [purported "Summary Plan Description"] at P2 (emphasis added).

stating that plaintiff's employer is not an agent of defendant Prudential, do not undercut plaintiff's claim against it.

Finally, in light of the fact that the identity of the individuals with whom plaintiff communicated about her benefits (or attempted to communicate with to no avail), are within the exclusive knowledge of the defendants – along with any information or documentation concerning the Hospital Defendants' assertion that defendant Prudential caused the error in the *payment* of plaintiff's benefits (as opposed an error in enrollment), defendant Prudential *cannot now complain that plaintiff's complaint should be dismissed for failing to allege the specific details of how the error occurred.*

As such, defendant Prudential's assertion - that the plaintiff's ERISA claim is "wholly undercut" by language in the unauthenticated "Group Contract" and "Booklet-Certificate", lacks merit.

## E.   *Defendant Prudential Breached Its Fiduciary Duty*

A fiduciary may be held liable for fiduciary breach if a plan member is misled due to a combination of an unclear summary plan description and misrepresentation by the fiduciary's agents. *DeRogatis v. Bd. Of Trs. Of the Welfare Fund of the Int'l Union of Operating Engineers Local 15,* 904 F.3d 174, 193 (2d Cir. 2018) citing *Estate of Becker v. Eastman Kodak,* 120 F.3d 5 (2d Cir. 1997).

Here, in addition to plaintiff's allegations that defendant Prudential misrepresented to her that her disability payments would not be subject to taxation, the purported "Summary Plan Description" is utterly devoid (let alone unclear) about the pre- versus post-tax benefits issue. Specifically, the unauthenticated documents on which defendant Prudential relies are utterly

devoid of any mention of a pre-tax versus post-tax premium elections and, as such, fail to offer plaintiff – or any member of her class, any guidance whatsoever on this point.

In addition, although the purported "Summary Plan Description" ostensibly describes the procedure for filing claims for benefit, the procedure for appealing the denial of a claim for benefits and certain ERISA rights and protections, it too fails to describe any guidance to plaintiff on the tax election/error at issue in this action. *See* Exhibit B ["Booklet-Certificate"] at "Summary Plan Description".

In light of the purported "Summary Plan Description's" utter silence on disability benefit taxation or correcting any errors regarding same, as well as, the allegations that defendant Prudential misrepresented to the plaintiff that her disability benefits would not incur tax, defendant Prudential may be held liable to plaintiff for fiduciary breach.

Furthermore, it is worth noting here that: (a) Page 9 of the purported "Certificate of Coverage" states that the plaintiff must enroll for disability benefits on a *form approved by Prudential;* (b) the purported "Certificate of Coverage" states that *Prudential is responsible for calculating the benefit payment*s; and (c) Page 39 of the purported "Certificate of Coverage" states that *Prudential is responsible for making the benefit payment*s. *See* Exhibit B ["Booklet-Certificate"].

In addition, the last page of the purported "Summary Plan Description": (a) explicitly includes a provision stating that a participant may "enforce [her] rights" by *inter alia* filing a lawsuit in federal court if her claim for benefits is denied or ignored; and (b) states as follows:

> "**Prudent Actions by Plan Fiduciaries**. In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. ***The people who operate your plan, called 'fiduciaries' of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries***. No one, including your employer, your union, or any other person, may fire

15

you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA."

*See* defendant Prudential's Exhibit B ["Summary Plan Description"] at last page (emphasis added).

Indeed, Section 404 of ERISA defines multiple fiduciary duties.  One if which is the duty of prudence – "which requires fiduciaries to discharge their duties … with care, skill, prudence and diligence under the circumstances ... that a prudent person acting in like capacity and familiar with such matters would use." *DeRogatis*, 904 F.3d at 193 citing ERISA 404(a)(1)(B).

Here, defendant Prudential, as insurer and claims administrator of the disability plan in which plaintiff participated, is a core ERISA fiduciary.  The amended complaint sufficiently alleges that defendant Prudential failed to pay plaintiff's disability benefits in a manner consistent with her explicit request to avoid having to pay taxes on those payments.  The amended complaint also sufficiently alleges that defendant Prudential further failed and refused to investigate (for example, by *inter alia* reviewing its calculation or manner of payment) or resolve the error once discovered by plaintiff.  In addition, even without the ability to allege facts that remain in defendant Prudential's exclusive possession (such as the identity of its employees or agents, or information regarding its calculation and payment of plaintiff's disability payments),[3] the amended complaint sufficiently alleges that defendant Prudential failed to discharge its fiduciary duties with the care, skill, prudence and diligence that a prudent person acting in like capacity and familiar with such matters would have used under the circumstances.

_____

[3] Since there is a question about whether the error was made by defendant Prudential when it paid plaintiff's benefits, its reliance on *Gordon v. CIGNA Corp.*, 890 F.3d 463, 474 (4th Cir. 2018) (finding that the insurer could not be held liable for a breach of fiduciary duty based on the employer's error's in failing to fulfill *its* fiduciary duties) is misplaced. Rather, here, defendant Prudential may be held liable for its own fiduciary breach(es) including but not limited to erring in making plaintiff's benefit payments.

16

In light of the foregoing, defendant Prudential's pre-answer motion to dismiss plaintiff's ERISA claim against it must be denied.

For the foregoing reasons, defendant Prudential's pre-answer motion to dismiss the plaintiff's ERISA claim against it - on the basis that plaintiff cannot establish that defendant Prudential breached its ERISA fiduciary duties to her, must be denied.

**F.**   ***Defendant Prudential Was Performing A Fiduciary Function***

As the undisputed insurer and claims administrator of the plan, defendant Prudential is a fiduciary and core ERISA entity. *See Tulczynska v. Queens Hospital Center*, 2018 U.S. Dist. LEXIS 46579 *9-13 (S.D.N.Y. 2018) citing *Varela v. Barnum Fin. Grp.*, 644 Fed. Appx. 30 *31 (2d Cir. 2016). Indeed, this Court previously found that plaintiff's allegation that defendant Prudential owed her a fiduciary duty arises out of the ERISA plan. *Tulczynska*, 2018 U.S. Dist. LEXIS *9-13 (2018).

In any event, to state a claim under ERISA for fiduciary breach, a plaintiff must establish that: (1) the defendant was performing a fiduciary function when it engaged in the conduct at issue in the complaint; (2) the defendant breached a fiduciary duty; and (3) the plaintiff is entitled to relief. *DeRogatis v. Bd. Of Trs. Of the Welfare Fund of the Int'l Union of Operating Engineers Local 15*, 904 F.3d 174 (2d Cir. 2018).

The United States Supreme Court has established the context for consideration of fiduciary duty claims under ERISA 502(a)(3). *DeRogatis*, 904 F.3d at 191 citing *Pegram v. Hendrich*, 530 U.S. 211 226 (2000). In every case charging breach of ERISA fiduciary duty, the threshold question is whether the defendant was acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to the complaint. *DeRogatis*, 904 F.3d at 191 citing *Pegram*, 530 U.S. at 226 (2000).

ERISA provides that a person is a fiduciary with respect to a plan to the extent that he or she exercises any authority or discretionary control respecting management of the plan, or has any discretionary authority or discretionary responsibility in the administration of the plan. *DeRogatis,* 904 F.3d at 191 (citation omitted). Therefore, courts determine whether an individual or entity is an ERISA fiduciary by focusing on the function performed, rather than on the title held. *DeRogatis,* 904 F.3d at 191 citing *Blatt v. Marshall & Lassman,* 812 F.2d 810, 812 (2d Cir. 1987).

Shortly after ERISA's enactment in 1974, the Department of Labor ("DOL") issued guidance on several aspects of fiduciary responsibility arising under the new statute. *DeRogatis,* 904 F.3d at 191 citing 29 C.F.R. 2509.75-8 (1975). "In the guidance document, DOL explained that a plan employee does not act as a fiduciary when 'performing purely ministerial functions … within a framework of policies, interpretations, rules, practices and procedures made by other persons … because [he] does not have discretionary authority or [] control respecting management of the plan.' *Id.* at D-2(A). As examples of ministerial functions, it cited (among other functions) '[a]pplication of rules determining eligibility for participation or benefits' and 'orientation of new participants and advising participants of their rights and options under the plan.' *Id.* at D-2(Q)(1), (7)." *DeRogatis,* 904 F.3d at 191.

However, recently, in *DeRogatis v. Bd. Of Trs. Of the Welfare Fund of the Int'l Union of Operating Engineers Local 15,* 904 F.3d 174 (2d Cir. 2018), the Second Circuit clarified that **administrators' act as fiduciaries when they "answer beneficiaries questions about the meaning of the terms of a plan so that those beneficiaries can more easily obtain the plan's benefits."** *DeRogatis,* 904 F.3d at 191-192 citing *Varity Corp. v. Howe,* 516 U.S. 489 (1996) (emphasis added).

*The fiduciary function encompasses communications conducted* by issuing written plan materials like summary plan descriptions, as well as, *through members' individualized consultations with benefits counselors*. *DeRogatis,* 904 F.3d at 192 citing *Varity*, 516 U.S. at 502-503 (noting the fiduciary function of answering questions about plan benefits) and *Bouboulis v. Transp. Workers Union,* 442 F.3d 55, 58, 66 (2d Cir. 2006) (concluding that a union, when acting as a fiduciary, may be liable for intentional misrepresentations about benefits that were made to members by union "officers and staff").

*Thus, an administrator of the plan may perform a fiduciary function through ministerial agents without converting those individual agents themselves into fiduciaries*. *DeRogatis,* 904 F.3d at 192.

In *DeRogatis,* the plaintiffs' fiduciary breach claim rested on misrepresentations alleged to have been made by Welfare Fund employees Keenan and Lopez when they communicated with members about health benefits. The Second Circuit assumed, without deciding, that the District Court correctly discerned a *dispute of material fact as to whether Keenan and Lopez acted with apparent authority as agents of the Pension Fund, as well as, of the Welfare Fund. Id.* Thus, for the purposes of the appeal, the Second Circuit treated Keenan and Lopez as agents of the Welfare Fund when they advised the plaintiffs regarding the health benefits, as well as, as agents of the Pension Fund when they offered advice regarding pension benefits, stating: "we may presume that those *communicative activities constituted fiduciary conduct attributable to each set of plan administrators*." *DeRogatis,* 904 F.3d at 192-193 (emphasis added).

*The plaintiffs asserted that the Pension Fund clothed Keenan and Lopez (Welfare Fund employees) with apparent authority to speak on behalf of the Pension Fund and that, through*

*their misrepresentations, the Pension Fund breached its fiduciary duty to appropriately advise the plaintiffs about how to obtain their benefits*. *DeRogatis,* 904 F.3d at 190.

The District Court awarded summary judgment to both Funds based in part on its conclusion that, in advising the plaintiffs, Welfare Fund employees Keenan and Lopez performed *purely ministerial functions* and, therefore, their conduct could not give rise to a breach of fiduciary duty. *DeRogatis,* 904 F.3d at 192. However, *the Second Circuit held, inter alia, that the District Court erred in holding that neither Fund performed a fiduciary function through Keenan and Lopez when those agents communicated with the plaintiffs about their benefits*. *DeRogatis,* 904 F.3d at 190.

Although the Second Circuit agreed with the District Court that a non-fiduciary plan employee is not personally bound by the fiduciary duties imposed by ERISA and is, therefore, not personally subject to liability for fiduciary breach (*DeRogatis,* 904 F.3d at 192 citing ERISA 404; 29 C.F.R. 2509.75-8), it pointed out that the plaintiffs did not name Keenan or Lopez as defendants but, rather, sued each Fund's board and trustees. *DeRogatis,* 904 F.3d at 192.

The Second Circuit further explained that the holding in *Tocker v. Kraft Foods N. Am. Inc. Ret. Plan,* 494 Fed. Appx. 129 (2d Cir. 2012):

> "constituted a non-precedential summary order in which this Court concluded that a human resources employee, Robert Varone, acted in a ministerial capacity 'when he researched and communicated to [plaintiff] the benefits [plaintiff] would receive' under the company's retirement plan. *Id.* at 130. The District Court cited *Tocker* as 'the Second Circuit's most on-point application of ERISA's definition of a fiduciary to plan employees.' *DeRogatis II,* 167 F.Supp.3d at 579. 'In *Tocker,* however, Varone was named as a defendant. The 'only issue' decided in *Tocker* was whether Varone himself 'acted in a fidcuiary capacity.' 494 Fed. App'x at 130. *'The Tocker panel did not address the question presented on this appeal: whether the conduct of a plan employee might contribute to a finding that a plan's administrator breached a fiduciary duty.'*"

*DeRogatis,* 904 F.3d at fn. 23 (emphasis added).

Thus, according to the Second Circuit's recent decision in *DeRogatis*, **_as an administrator of the plan, defendant Prudential "acts as a fiduciary when it communicates with plan members and plan beneficiaries about their benefits. The fiduciary quality of their function continues when they communicate on those key topics through the statements of agents who do not, themselves, meet the definition of a 'fiduciary' in their own right_**." *DeRogatis*, 904 F.3d at 190 (emphasis added).

The Second Circuit in *DeRogatis*, **_explicitly "reject[ed] the [defendant] Funds' contention that they cannot be liable for a breach of fiduciary duty based on statements made by non-fiduciary, 'ministerial' employees."_** *DeRogatis*, 904 F.3d at 190-191 (emphasis added). Accordingly, the Second Circuit held that **_neither fund demonstrated entitlement to summary judgment based on the "fiduciary function" element of the plaintiffs' claims for breach of fiduciary duty since a factfinder could reasonably conclude that the_** **_Funds performed a fiduciary function when speaking through the Welfare Fund's ministerial employees_**." *DeRogatis*, 904 F.3d at 191 (emphasis added). As such, **_the Second Circuit explicitly determined that the Funds performed a fiduciary function when they communicated with the plaintiffs about plan benefits_**. *DeRogatis*, 904 F.3d at 193.

Here, it is undisputed that defendant Prudential is an ERISA fiduciary as the insurer and claims *administrator* of the plan, having a fiduciary duty to the plaintiff, a plan participant. Defendant Prudential owed plaintiff a fiduciary duty, including the duties of care, loyalty and prudence (as previously discussed).

*Through its agents, employees and/or apparent agents/employees*, defendant Prudential performed a fiduciary function when it *inter alia* communicated with the plaintiff about the disability plan benefits and when it calculated and paid plaintiff's disability benefits (as well as,

when it breached its duty by ignoring the plaintiff's inquiries upon her discovering that she owed taxes on those benefit payments).

As the Second Circuit's *DeRogatis* decision makes clear, as a plan fiduciary, defendant Prudential may indeed be held liable for breach its fiduciary duty under ERISA - *even if the fiduciary functions were performed by ministerial employees/agents or* **apparent** *employees/agents who, inter alia, communicated with the plaintiff about the plan benefits and who calculated and paid plaintiff's benefits* (or even breached that duty by ignoring plaintiff's requests for an investigation and resolution of the issue).   Accordingly, defendant Prudential's motion to dismiss plaintiff ERISA claim – on the grounds that it was not performing a fiduciary function when it engaged in the conduct at issue, must be denied.

In light of the foregoing, defendant Prudential's pre-answer motion to dismiss plaintiff's ERISA claim against it must be denied.   The plaintiff respectfully asks this Court to direct defendant Prudential to answer the amended complaint forthwith so that discovery in this action may commence as soon as possible.[4]

### POINT IV

### <u>Equitable Tolling</u>

Plaintiff's recollection of the dates of the discriminatory events alleged in the amended complaint differ from those alleged by the Hospital Defendants' *unauthenticated* documents.   That said, plaintiff concedes that her memory and cognitive abilities have been significantly deteriorated

---

[4] To the extent that defendant Prudential seeks information beyond the allegations contained in the amended complaint, it is free to withdraw its pre-answer motion to dismiss, answer the amended complaint and proceed with discovery.

by her Parkinson's Disease - ever since she took disability leave from her position as a doctor of pulmonology.

As such, assuming *arguendo* that the documents submitted by the Hospital Defendants could be *authenticated via discovery* – to establish that defendant Dr. Lopez was promoted to Chief of Pulmonology in October 2011, that plaintiff took leave from her position due to her medical condition effective December 3, 2013 (when she was no longer able to perform her job functions as a result of her disability), and then later went on long term disability on June 5, 2014, the statute of limitations should be equitably tolled on the basis that plaintiff's Parkinson's Disease severely affected her mental and cognitive capacity as of the time she went on leave and thereafter.

Parkinson's Disease is a progressive nervous system disorder.  Symptoms of Parkinson's Disease include tremors, slowed movement, rigid muscles, impaired posture and balance, loss of automatic movements, speech and writing changes.   Parkinson's Disease is also often accompanied by additional problems including cognitive problems (dementia) and thinking difficulties, depression and emotional changes, swallowing, chewing and eating problems, sleep problems and disorders.   *See* https://www.mayoclinic.org/diseases-conditions/parkinsons-disease/symptoms-causes/syc-20376055.

As set forth in the amended complaint, it is plaintiff's position that the Hospital Defendants unlawful failure to promote her (instead of defendant Dr. Lopez) to Chief of Pulmonology, hostile work environment, discriminatory animus and failure to provide her with a reasonable accommodation at a time when she was capable of performing her essential duties as a doctor of pulmonology, aggravated and exacerbated her disability ultimately forcing her to take her disability leave and leading to her early termination.

The amended complaint alleges that the events forming the bases of her discrimination claims occurred in the summer and fall of 2014. More specifically, that she was unlawfully passed over for a promotion to Chief of Pulmonology in or about August of 2014 – when a then-junior-doctor, defendant Dr. Lopez, received the promotion instead. It was also at and around that time, among others, that she was subjected to a hostile work environment by the individual defendant doctors – e.g., Dr. Lopez, Dr. Fleischman and Dr. Rahman, who were publicly making discriminatory remarks about her disability. After being passed over for her rightful promotion, plaintiff was not only unreasonably denied her requests for a reasonable accommodation and Dr. Lopez unreasonably denied the request in a manner that involved public ridicule of her disability. All of these discriminatory events occurred at a time when the plaintiff was still capably, competently and satisfactorily performing her duties as a doctor of pulmonology at defendants QHC and Sinai.

As such, any assertion that the plaintiff could not establish a requisite element of her claims for failure to provide a reasonable accommodation, failure to promote and wrongful termination claims – e.g., that she was capable of performing her essential job duties at the time that she was passed over for the promotion and refused a reasonable accommodation, lacks merit.

That said, plaintiff contends that the Hospital Defendants' discriminatory conduct and animus as aforesaid aggravated and exacerbated her disease, ultimately forcing her to take her disability leave and leading to her early termination. Indeed, (*if later authenticated via discovery*) the physician's certification supports plaintiff's claims that the Hospital Defendants' unlawful discrimination – e.g., failure to promote, hostile work environment, failure to provide reasonable accommodation, in fact aggravated and exacerbated plaintiff's condition leading to her having to take her leave. Significantly, by the time plaintiff was forced to take leave for her disability and

in the years that followed, plaintiff's memory and cognitive abilities were - and continue to be, significantly deteriorated by her Parkinson's Disease.

A plaintiff is entitled to equitable tolling of a statute of limitations if she establishes two elements: (1) that she has been pursuing her rights diligently and (2) that some extraordinary circumstance stood in her way and prevented timely filing. *See Menominee Indian Tribe of Wisc. v. U.S.,* 136 S.Ct. 750, 755 (2016). *See also Ellul v. Congregation of Christian Bros.,* 774 F.3d 791, 801 (2d Cir. 2014).

The second element of this test is met only where the circumstances causing plaintiff's delay "are both extraordinary and beyond [her] control." *Menominee,* 136 S.Ct. at 756. "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole,* 648 F.3d 132, 137 (2d Cir. 2011) citing *Bolarinwa v. Williams,* 593 F.3d 226, 231-32 (2d Cir. 2010) and *Diaz v. Kelly,* 515 F.3d 149, 154 (2d Cir. 2008). It is not sufficient for plaintiff to show that she experienced extraordinary circumstances – she must further demonstrate that those circumstances caused her to miss the original filing deadline. *Harper v. Ercole,* 648 F.3d 132, 137 (2d Cir. 2011).

Further, a plaintiff seeking equitable tolling must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of her filing, a demonstration that cannot be made if the plaintiff, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstance. *Valverde v. Stinson,* 244 F.3d 129, 134 (2d Cir. 2000).

The Second Circuit has held that "equitable tolling may be appropriate where the plaintiff's failure to comply with the statute of limitations is attributable to the plaintiff's medical condition." *Brown v. Parkchester S. Condos,* 287 F.3d 58, 60 (2d Cir. 2000).  In determining whether to allow

tolling based on medical illness, a court must look for a "particularized description of how [plaintiff's] condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000). *See also Canales v. Sullivan,* 936 F.2d 755, 759 (2d Cir. 1991) (highlighting that the question of whether a person is sufficiently disabled to justify tolling of a limitation period is highly case specific). Particularly, a plaintiff's medical condition must be so severe as to impact the plaintiff's function such that they are rendered unable to comprehend or pursue their legal rights. *Brown,* 287 F.3d at 61.

Here, plaintiff's medical impairments – including the significant deterioration of her memory and cognitive abilities caused by her Parkinson's Disease, were sufficiently severe at the time she took disability leave and have continued to deteriorate since that time. Under such circumstances - *if it is later established through discovery* that the unlawful events occurred earlier than plaintiff alleges that they did, equitable tolling of the three year statute of limitations for bringing disability discrimination claims under the NYSHRL and NYCHRL would be warranted in this case.

In her amended complaint, the plaintiff alleged sufficient facts to suggest that her Parkinson's Disease rendered her unable to comprehend her legal rights and prevented her from protecting or asserting her claims within the applicable limitations period – first and foremost, that she was disabled by Parkinson's Disease when she took leave from her position as a doctor of pulmonology.

As such, even assuming *arguendo* that some of the events occurred as early as the Summer and Fall of 2011 (as opposed to 2014) and that plaintiff took leave in December 2013 (also as opposed to 2014), the significant deterioration of her memory and cognitive abilities caused by her Parkinson's Disease - which began when she took her leave in December of 2013 (according to

the unauthenticated submissions), occurred prior to the expiration of the three year limitations period. Significantly, it must be stated here that the plaintiff's memory and cognitive abilities have continued to deteriorate ever since.

Therefore, even assuming *arguendo* that the three year limitations period for bringing disability discrimination claims under the NYSHRL and NYCHRL expired shortly prior to the commencement of his action, equitable tolling of plaintiff's claims would be warranted.

In light of the foregoing, the plaintiff first and foremost respectfully asks this Court to reject the Hospital defendants' unauthenticated submissions, and any attempt to remedy said deficiency in reply and/or to otherwise submit additional documents that plaintiff will be unable to address on this motion.

The plaintiff further respectfully asks this Court to deny the defendants' motions to dismiss and to direct the defendants' to answer the amended complaint forthwith so that discovery may commence as expeditiously as possible in light of the plaintiff's advanced age and deteriorating condition.

Finally, in light of the onset, progression and deterioration of her memory and cognitive abilities due to her disability from Parkinson's Disease; the illness that forms the very basis for her disability discrimination and ERISA claims, and in the event that the Hospital Defendants may hereafter be able to authenticate their submissions (so as to show that the facts and events asserted in the amended complaint occurred earlier than plaintiff has alleged), plaintiff will respectfully seek the opportunity to fully and thoroughly address any legitimate statute of limitations defense and make formal argument for equitable tolling of her claims at that time.

## **CONCLUSION**

For the foregoing reasons, the defendants' respective pre-answer motions to dismiss the amended complaint must be denied in their entirety.

Furthermore, the plaintiff respectfully asks this Court to direct the defendants to answer the amended complaint forthwith and for an expedited discovery schedule in this case in light of the plaintiff's deteriorating disability, e.g., Parkinson's Disease.

Dated:   New York, New York
        November 10, 2018

                                Respectfully submitted,
                                ILASZ & ASSOCIATES

                                By: /s/ Livius Ilasz
                                      Livius Ilasz
                                1 Maiden Lane, 9th Floor
                                New York, New York 10038
                                Tel. (212) 480-2222
                                Counsel for the Plaintiff
                                Joanna Tulczynska

## <u>CERTIFICATE OF SERVICE</u>

I, Livius Ilasz, an attorney, do hereby certify that I have caused a true and correct copy of the

foregoing document to be filed using the CM/ECF system, which will automatically send email

notification of such filing to all attorneys of record on November 10, 2018.

/s/ Livius Ilasz
Livius Ilasz