```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
JOANNA TULCZYNSKA,
                         Plaintiff,
                                                    17 Civ. 1669 (DAB)
                                                    MEMORANDUM & ORDER
        v.

QUEENS HOSPITAL CENTER, et al.,
                         Defendants.
----------------------------------------X
```

DEBORAH A. BATTS, United States District Judge.

Plaintiff Joanna Tulczynska ("Plaintiff") is a former doctor of pulmonology who brings claims against Queens Hospital Center, Mount Sinai Health System, Inc., Dr. Ricardo Lopez, Dr. Jean Fleishman, and Dr. Habibur Rahman (collectively, "Hospital Defendants").[1] Tulczynska's federal claims (Counts One and Seven) allege a violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), in which she alleges that Hospital Defendants breached a fiduciary duty owed to her by failing to enroll her in an after-tax disability insurance plan that she sought. Tulczynska also alleges violations of the New York State and City Human Rights Laws by Hospital Defendants in that they allegedly discriminated against her for her disability (Parkinson's Disease) in various ways: (1) that Tulczynska was wrongly passed over for a promotion to Chief of Pulmonology, which was instead given to the less-

---

[1] In Plaintiff's original Complaint, she included Roselyn Marquez among the Hospital Defendants. Since the Amended Complaint makes no mention of Marquez, the Court will consider the claims against Marquez to be waived. In addition, Defendant Prudential mentioned in the Amended Complaint is not a part of the instant motion; Prudential settled with Plaintiff on January 18, 2019.

1

experienced Dr. Lopez (Count Two); (2) Tulczynska was denied reasonable accommodations (Count One); (3) Tulczynska was wrongfully terminated (Count Five); (4) aiding and abetting disability discrimination (Count Six); and (5) Tulczynska was subjected to a hostile work environment (Count Four). Hospital Defendants now move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Plaintiff's claims. For the reasons set forth below, Defendants' motion is GRANTED.

I.   BACKGROUND

Tulczynska was employed by Queens Hospital Center and Mount Sinai as a doctor of pulmonology and as an associate professor. Am. Compl. ¶ 3. In or about August of 2014, she alleges that she sought to enroll in an after-tax disability insurance policy. Id. ¶ 36. In the event that she received disability payments, she would not have to pay taxes on those benefits. She "spoke with the woman who worked in Defendants QHC and Sinai's Human Resources Department at the hospital and told her explicitly that [Plaintiff] wanted to enroll in an after-tax disability insurance policy[.]" Id. ¶ 37. Tulczynska also alleges that she spoke with that woman's superior, a man who worked in the same department, and told him the same thing. Id. ¶ 38. Each person "repeatedly assured" Plaintiff that she would be enrolled in the correct insurance policy. Id. ¶ 39. Upon information and belief, Tulczynska alleges that the woman and the man were "authorized representatives or agents" of the hospital's insurer, Prudential. Id. ¶ 43.

2

Tulczynska alleges that she retired on November 28, 2014. Id. ¶ 45. She subsequently received disability benefits for her Parkinson's disease. She received a notice from the Internal Revenue Service dated October 24, 2016 stating that she owed $28,525.38 in back taxes for 2015. Id. ¶ 48. Tulczynska alleges that she discovered that the back taxes were imposed "because of disability payments she received in 2015." Id. ¶ 50.

Tulczynska continued to receive disability benefits in 2016 and 2017. Id. ¶ 51. She "repeatedly tried calling Human Resources" but "never received a return phone call." Id. ¶ 52. She also telephoned Prudential "and was told to speak to the Plan Administrator at Defendants QHC and [Mount] Sinai." Id. Defendants QHC, Mount Sinai, and Prudential "never responded" to her communications. Id.

At a date unstated she received a letter saying "that her disability insurance benefits under the policy would end in May of 2017." Id. ¶ 54.

The factual basis for Tulczynska's state and local claims of disability discrimination are as follows: she alleges that she was denied a promotion to Chief of Pulmonology in August of 2014 that she was "next in line" to receive, since she was most senior pulmonologist; that Lopez was promoted to Chief of Pulmonology even though he had been employed as a doctor in the pulmonology department for only two years; and that Lopez was "close friends" with both Fleischman and Rahman. Id. ¶¶ 17-20.

3

Regarding Tulczynska's hostile work environment claim, she alleges that on one occasion in July of 2014, Defendants Rahman, Lopez, and Fleischman "made fun of" and "intentionally embarrassed" Plaintiff "because of her Parkinson's disease" in front of other medical personnel and residents. Id. ¶ 21. Defendant Rahman "commented in a snarky manner" that Tulczynska would never be promoted to Chief of Pulmonology because of her Parkinson's disease, said that "we will not work for you," and said that the hospital "needed another attending physician when the Plaintiff was on duty." Id. ¶ 22. Lopez and Fleischman allegedly laughed at these statements.

After Lopez was allegedly promoted to Chief of Pulmonology one month later, Plaintiff approached him in a room where medical personnel and residents congregate to ask him "privately if she would be able to reduce her hours because of her Parkinson's disease." Id. ¶ 27. Lopez allegedly responded that Tulczynska would not receive any workplace accommodation. Id. ¶ 28. Lopez then "proceeded to deliberately embarrass the Plaintiff in front of other fellows, residents, and medical personnel by asking her questions as if she were a first-year resident." Id. ¶ 29.

On another occasion, Lopez announced in the same room mentioned above, "for no apparent reason," that Tulczynska would not receive any workplace accommodation and would work as many hours as any other employee. Id. ¶ 30.

Tulczynska alleges that this discriminatory conduct aggravated and exacerbated her Parkinson's disease and she was "forced to retire early." Id. ¶¶ 33, 35.

On February 7, 2017, Tulczynska commenced the present action. Defendants removed the action to federal court. Hospital Defendants and Prudential filed Motions to Dismiss, which this Court granted on March 14, 2018. Tulczynska was given leave to replead several of her original claims as claims arising under ERISA.

Tulczynska initially filed an appeal of the March 14, 2018 Order, but withdrew the appeal. The present Amended Complaint was filed on April 26, 2018. Prudential filed a Motion to Dismiss the Amended Complaint on August 10, 2018. Hospital Defendants filed a Motion to Dismiss on September 7, 2018. On January 24, 2019, Prudential settled with Plaintiff. Before the Court is Hospital Defendants' Motion to Dismiss pursuant to Rule 12(b)(6).

II. DISCUSSION

　A. Legal Standard for a Motion to Dismiss

For a complaint to survive a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court has explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

> misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–57). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Supreme Court further stated,

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

The Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002); Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). However, this principle is "inapplicable to legal conclusions,"

6

Iqbal, 556 U.S. at 678, which, like the complaint's "labels and conclusions," Twombly, 550 U.S. at 555, are disregarded. Nor should a court "accept [as] true a legal conclusion couched as a factual allegation." Id. at 555.

In resolving a 12(b)(6) motion, a district court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also ASARCO LLC v. Goodwin, 756 F.3d 191, 198 (2d Cir. 2014). A plaintiff's "failure to include matters of which as pleaders they had notice and which were integral to their claim – and that they apparently most wanted to avoid – may not serve as a means of forestalling the district court's decision on [a 12(b)(6)] motion." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (quotations, alterations and citation omitted); see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint[,] the necessity of translating a Rule 12(b)(6) motion into one [for summary judgment] under Rule 56 is largely dissipated.")

B. <u>Documentary Evidence Produced by Defendants to Refute the Amended Complaint</u>

In their Motion to Dismiss, Hospital Defendants produce documentary evidence (primarily personnel action forms and other Human Resources documents) showing that: (1) Tulczynska's employment was terminated effective June 4, 2014 when she was placed on Long Term Disability Status; (2) Tulczynska had been on a medical leave of absence since December 3, 2013; and (3) Lopez was already Chief of Pulmonology for several years before Tulczynska claims that she was denied the promotion – in fact, he became Chief of Pulmonology in 2011. <u>See</u> Robins Decl., Exs. A, B, C.

In addition, Hospital Defendants produced documentation that Tulczynska's medical leave of absence beginning on December 3, 2013 was taken at her own request pursuant to the Family and Medical Leave Act of 1993. Tulczynska submitted a Certification Form to the hospital in order to take FMLA leave and Defendant Mount Sinai's Office of Human Resources returned a Designation Notice to her confirming that she was eligible for leave. <u>See</u> Robins Decl., Ex. D. The Certification Form asked Plaintiff's health care provider whether she would "need to . . . work on an intermittent, part-time, or on a reduced schedule because of their medical condition?" Her health care provider marked "no." <u>Id.</u> When asked if Tulczynska was "<u>unable to perform any</u> of his/her job functions due to the condition," Plaintiff's health care provider marked "yes." <u>Id.</u> Tulczynska submitted a Group Disability Insurance Authorization and

8

Attending Physician Statement to Prudential dated December 14, 2013 – eleven days after Hospital Defendants allege that she began her FMLA leave – stating that she "will not be able to return to work" because her "Parkinson Disease symptoms have retrogressed." Robins Decl., Ex. E.

Hospital Defendants produce a letter dated August 26, 2014 that a Mount Sinai Human Resources Assistant sent to the Social Insurance Institution, a Polish state organization responsible for paying out social insurance benefits to its members.[2] Robins Decl., Ex. F. The letter stated that Tulczynska had been employed from July 19, 1993 to June 4, 2014 and "is currently on Long Term Disability." Id. The bottom of the letter is signed by Tulczynska.

Finally, Hospital Defendants produce a Human Resources Benefit Election form, which shows that Tulczynska has been enrolled in a post-tax Long Term Disability insurance policy since 2004. Robins Decl., Ex. G. The form shows that for the years 2004 up through and including 2014 Tulczynska was enrolled in the same policy – the Long Term Disability Post-Tax Option. Id.

   C. Consideration of Material Not Attached to or Incorporated by Reference in the Complaint on a Rule 12(b)(6) Motion

Extrinsic evidence outside the pleading may be considered part of a complaint when that evidence is incorporated by reference in the pleading, or when a court deems the evidence to be "integral"

---

[2] This is presumably to bolster their claim that Tulczynska was aware that her employment ended on June 4, 2014.

9

to at least one claim in the pleading. See Chambers, 282 F.3d at 152-53 (2d Cir. 2002). Evidence is integral to the pleading where the plaintiff has actual notice of the evidence and the complaint "relies heavily upon its terms and effect" in "framing" the pleading. Id. (internal citations omitted).

Courts may also consider documents that the plaintiff either possessed or knew about and relied upon in bringing the suit. See Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir.2000) (citing Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992)). Artful pleading by the plaintiff is exemplified by the failure to include matters of which "as pleaders they had notice and which were integral to their claim – and that they apparently most wanted to avoid"; this will not forestall a district court's decision on a motion to dismiss. Cortec, 949 F.2d at 44 (2d Cir. 1991).

The factual context of Cortec Industries is elucidating to the present case. Plaintiffs were purchasers of a corporation's stock and debts. They alleged that they would not have entered the sale but for the defendant's misrepresentations and omissions about the corporation's financial health. Defendant's moved to dismiss pursuant to Rule 12(b)(6) with extrinsic documents attached to that motion. Included among those documents were a stock purchasing agreement and an offering memorandum discussing the corporation's financial condition. Id. at 46. Plaintiffs argued that these documents could not be considered by the district court on a motion

10

to dismiss, because they were not attached to nor incorporated by reference in plaintiffs' complaint. Id. The Second Circuit found that since plaintiffs "had notice" of the documents and because they were "integral" to plaintiffs' claims, they could fairly be considered by the district court on a Rule 12(b)(6) motion. "A finding that plaintiff has had notice of documents used by defendants in a 12(b)(6) motion is significant" because "the problem that rises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff[.]" Id. at 48. Where a plaintiff has "actual notice of <u>all the information in the movant's papers</u>" – not necessarily the exact papers themselves – and has relied upon the information in those documents in framing the complaint, the necessity of translating a motion to dismiss into a motion for summary judgment under Federal Rule of Civil Procedure 56 "is largely dissipated." Id. (emphasis added).

Despite the fact that the extrinsic documents attached to the defendant's motion to dismiss were not attached to the complaint (nor incorporated by reference in it), the Second Circuit found that the district court was entitled to consider them in deciding the 12(b)(6) motion, because the plaintiff did not lack notice of the documents and the documents were integral to the complaint. Id.

Chambers v. Time Warner, Inc. later refined the notice requirement from Cortec Industries. Mere "notice or possession" of the document was insufficient; plaintiff had to rely on the documents, and such reliance was "a necessary prerequisite to the

11

court's consideration of the document on a dismissal motion[.]" 282 F.3d 147, 153 (2d Cir. 2002). In Chambers, the court was unconvinced that the plaintiff had relied on certain documents in "framing" the pleading; therefore, they would not be considered in deciding the motion to dismiss. Id. at 154.

Cortec and Chambers both remain controlling law. As a general matter, extrinsic documents should not be considered on a motion to dismiss, but if the plaintiff knows about a document, intentionally chooses to disregard it, and avoids mentioning it in the pleading, but relies on the document's information in framing their pleading, a defendant moving to dismiss may still rely on that document in a motion to dismiss. There is no principled reason for a district court to subject the defendant to the additional expense and burden of considering the same matter later on a motion for summary judgment.

Perhaps most applicable here, where the language of a complaint is contradicted by a written document that plaintiff artfully conceals from a court, the court may consider such a document on a motion to dismiss. See Karmilowicz v. Hartford Financial Services Grp., 494 F.App'x 153, 156 (2d Cir. 2012); Ginx, Inc. v. Soho Alliance, 720 F. Supp. 2d 342, 345 (S.D.N.Y. 2010) ("[A]ny reference to several important court and administrative documents has been inexplicably and improperly omitted from the Amended Complaint, thereby creating a demonstrably false impression of certain key facts . . . When plaintiffs fail to include any

12

reference to documents that they knew of that are integral to their claim, there is no need for the court to convert the motion to a summary judgment motion in order to take them into account.")

III. ANALYSIS

Plaintiff's opposition argues that Hospital Defendants' documentary evidence should not be considered because it was "unauthenticated." Plaintiff cites to no federal law to explain what type of "authentication" should be required in this context. Notably, Plaintiff does not dispute the underlying accuracy or veracity of these documents – she argues only that they are "internal" and "unauthenticated." See, e.g. Pl.'s Opp. Mot. at 8. She does not acknowledge the fact that most of the documents are signed by her or her doctor.

Hospital Defendants respond that, as case law shows, documentary evidence should be considered where it flatly contradicts the allegations in the Amended Complaint.

This court is not required to accept Plaintiff's strategic choice to omit several documents and facts, the effect of which is to create a misleading impression of the factual basis underlying her claim.

Therefore, the Court considers the following in ruling on the Hospital Defendants' motion to dismiss:

- The Certification Form submitted and signed by Plaintiff to the hospital as a prerequisite to her taking FMLA leave

13

beginning on December 3, 2013, see Robins Decl., Ex. D;

- The Group Disability Insurance Authorization and Attending Physician Statement submitted and signed by Plaintiff to Prudential dated December 14, 2013 stating that Plaintiff "will not be able to return to work" because her "Parkinson Disease symptoms have retrogressed," see Robins Decl., Ex. E;

- The letter dated August 26, 2014, signed by Plaintiff, that was sent by a Mount Sinai Human Resources Assistant to the Social Insurance Institution, stated that Plaintiff had been employed from July 19, 1993 to June 4, 2014 and "is currently on Long Term Disability," see Robins Decl., Ex. F;[3]

- The Human Resources Benefit Election form showing that Plaintiff has been enrolled in the same Long Term Disability Post-Tax Option benefit plan from 2004 up through and including 2014, see Robins Decl., Ex. G; and

- The Personnel Action Form showing that Lopez became Chief of Pulmonology in 2011, see Robins Decl., Ex. C.

These documents – the contents of which Plaintiff had notice well before Hospital Defendants attached them to their Motion to Dismiss, because she signed four of them – are integral to the ERISA claim and discrimination claims.

Plaintiff's claims under the NYSHRL and NYCHRL related to the promotion are both time-barred – this documentation shows that Lopez was promoted three years before Plaintiff alleges. See Am. Compl. ¶ 25. She could not have been wrongfully denied a promotion to Chief of Pulmonology in 2014, since the position was already filled by Lopez.

---

[3] The personnel action forms submitted in Exhibits A and B are duplicative of the information contained in Exhibits D, E, and F, and are therefore not being considered on this motion.

Plaintiff's argument that she was "forced to retire early" on November 28, 2014 due to alleged hostile conduct at work is refuted by the documentary evidence produced by Hospital Defendants that she elected to take FMLA leave on December 3, 2013, never returned to work due to her worsening condition, and went on long-term disability (and was therefore terminated) on June 4, 2014. See Am. Compl. ¶¶ 35, 70; Robins Decl. Exs. D, E, F. There are no allegations in the Amended Complaint that her employer or fellow employees forced her or pressured her to go on disability leave. Any allegations that Plaintiff was not reasonably accommodated would have accrued at the very latest prior to her taking FMLA leave on December 3, 2013 – more than three years before Plaintiff filed her original Complaint in February 7, 2017 – and would be time-barred. Likewise, Plaintiff's discrimination claim related to a hostile work environment would have accrued prior to December 3, 2013 and is time-barred. Even if it were not time-barred, both of the incidents that Plaintiff alleges created a hostile work environment occurred after she was already terminated in June or 2013.

Plaintiff fails to state a claim of fiduciary liability under ERISA as to Hospital Defendants. The document produced shows that she was, in fact, enrolled in Long-Term Disability Post-Tax option plan from 2004 through 2014. See Robins Decl., Ex. G. Plaintiff does not dispute the veracity of this document, only that it is "unauthenticated."

Hospital Defendants argue, and Plaintiff does not dispute, that Prudential was the Claims Administrator under the plan, i.e. they provided the plan benefits, and Mount Sinai was the Plan Administrator and was responsible only for general plan administration, including enrollment. See Pl.'s Mot. to Dismiss at 12-13. Hospital Defendants provided documentation that they did enroll Plaintiff in the correct plan and had done so since 2004. Plaintiff has not and cannot plead that Mount Sinai's fiduciary duty extended to the payment of those benefits.

IV.  CONCLUSION

For the above reasons, the Hospital Defendant's motion to dismiss the Amended Complaint is GRANTED. The Clerk of the Court is directed to close the docket in this case.

SO ORDERED.

Dated:   New York, New York
         February 12, 2019

*Deborah A. Batts*
Deborah A. Batts
United States District Judge